# THE CROWN CORK AND SEAL COMPANY *vs.* JOSEPHINE O'LEARY, by Next Friend.

*Master and Servant—Custom of Operators to Use Machinery in a Dangerous Way—Knowledge Thereof by Employer—Duty to Warn of Danger—Instructions to Jury.*

A master is not bound to inform an employee, who has had experience in working machinery, that it is dangerous to put his hand under a machine at a point not open to view, when it is not necessary for him to do so in operating the machine, unless the master knows that the employee in the prior operation of machines of a similar kind had been in the habit of so placing his hands.

Plaintiff, a young woman nearly twenty-one years of age, had been employed in defendant company's factory for a year and a half to operate a machine for making bottle stoppers, and in so doing had been in the habit of putting her fingers under a channel plate of the machine, where there was a space of about two inches, and that was also the custom of certain other operators. Some of the machines in the factory were changed, and under the channel plate in the new machines, there were rollers which made it dangerous for an operator to put his hand there. These rollers were not visible unless the operator stooped down to look under the machine. Plaintiff was put to work on one of the new machine, but was told of the difference in construction which made it dangerous to put her hands under the channel plate, and in doing so, she was injured. It was not necessary for her in the operation of the machine to put her hands under the plate. *Held*, that it was error to instruct the jury that the plaintiff is entitled to recover if they find the facts above mentioned, but that if they also find that had the plaintiff exercised the care that an ordinarily prudent woman with experience should have exercised, she would have discovered the danger of putting her hand under the plate of the remodeled machine, in which case their verdict must be for the defendant. This instruction assumes that the defendant knew that the plaintiff and other operators were accustomed to put their hands under the channel plates, and does not leave to the jury to find that the defendant did have such knowledge, or that the custom to do so was so universal that the defendant would be presumed to have knowledge of it. If the defendant did not know that such had been the custom of the plaintiff and others in operating the old machines, it was under no obligation to warn plaintiff of the danger of so doing in the new machines, since it was not necessary so to place her hands in operating either kind of machine.

*Held*, further, that evidence is admissible to show a custom on the part

of operators to use the space under the channel plates, and knowledge thereof by the defendant.

*Held*, further, that the evidence in this case is sufficient to require the submission to the jury of the questions of the defendant's negligence, and of the plaintiff's contributory negligence.

*Decided June 25th, 1908.*

Appeal from the Baltimore City Court (NILES, J.), where there was a judgment for the plaintiff for $750.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*John E. Semmes* (with whom was *John E. Semmes, Jr.*, on the brief), for the appellant.

*Francis I. Mooney* and *William G. Towers* (with whom was *Harry B. Wolf* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee recovered a judgment against the appellant for injuries sustained by her while operating a machine which the declaration alleged "was equipped with a dangerous piece of mechanism under the lower die, which was unknown to the plaintiff, but was known to the defendant; and the plaintiff was not warned by the defendant of the said dangerous condition of said machinery." The plaintiff was nearly twenty-one years of age when the accident happened, and had been in the employ of the defendant a year and seven months. The defendant had a number of machines which were used in making stoppers for bottles, and consisting of a metal cap with a piece of cork filled in, so as to form a sealing device known as the Crown cork. Originally four girls worked on and about a machine—two fed it and did other work as helpers, while the other two ran it and were known as first and second runners. When the plaintiff was first employed in June, 1905, she was a helper, and after being employed in that way for about three months she was put to work on another machine

as a second runner. She worked on that for about a month and then went to another, as first runner, in which capacity she worked on the same kind of machines until shortly before the accident, which occurred on January 21st, 1907. Some of the machines had been changed into what are called "automatics" and, after the change, it only required two girls to run a machine. The plaintiff testified that when she was running the old machine she was accustomed to place a scraper, a pick, a rod and a card, which she used in connection with her work, under what is called a channel plate, in a space which is described as being about two inches. There were some rollers under the channel plate in the new machine which were not in the old ones—one of which caused the injury to the plaintiff. A witness who had changed the old machines into automatics was asked the question: "What difference, if any, was made in that space under the lower channel plate after you got the rollers or bumpers in, as you call it—what difference was made in the space then as compared with the space that was in there in the old machine?" and he replied: "Lots of difference. If they get their hands in there it would cut them off, because there was no room at all. That is the difference. There is no room that you could get anything in at all."

The plaintiff testified that a boy punched the cards spoken of, to keep a record of the work done by each girl, and that she was injured when placing a card under the channel plate. On cross-examination she gave the following testimony: "Q. You could not see what was underneath the channel plate without stooping, could you? A. No, sir. Q. You did not stoop down when you put your hand down there that time; did you? A. On the new automatic? Q. Yes? A. No, sir; I didn't think it was necessary. Q. And you put your hand down there without looking? A. Without looking. Q. And you did that for the purpose of putting the card in there? A. I was always in the habit of doing so. We were not told about any danger." The theory of the plaintiff is that it was customary to place these articles under the channel plate on the old machines and that there was no danger in doing so;

that the change was made in the automatics which made it dangerous, but she was not informed of the danger and was not aware that there was any.

There were several exceptions taken to the admissibility of the evidence, but we will first consider the rulings on the prayers, which are presented by the sixth and seventh bills of exception. The defendant offered a prayer that there was no legally sufficient evidence to entitle the plaintiff to recover, and one instructing the jury that the plaintiff was guilty of contributory negligence.

The Court rejected both of these prayers, and gave the following instruction: "If the jury find from the evidence in this case that the plaintiff was employed by the defendant corporation on or about the 21st day of January, 1907, at their establishment in Baltimore City, and had there been so employed for about a year and seven months past in operating their cork-feeding machines, all of which machines up to a short time prior to January 21st, 1907, were composed in part of a flat channel plate, under which the plaintiff and other operatives were accustomed to put their hands for purposes of their own and could so place their hands without danger; and if the jury further find that a short time prior to said 21st of January, 1907, certain of these said cork-feeding machines of the defendant were remodeled and the character thereof changed, and that such remodeled machines had as a part thereof a channel plate used for the same purposes as the channel plate upon the old machines, and which appeared to be similar thereto in every respect, unless a person inspecting them should stoop down and specially examine them from beneath; but that in reality upon the bottom of this channel plate in a remodeled machine there were rapidly revolving 'stop rollers,' which in fact made it dangerous for operatives to put their hands under the channel plate as they had been accustomed to do with the old machine; and if they shall further find that the plaintiff was at work upon a remodeled machine in the course of her employment by the defendant, and had not been instructed as to the danger of placing her hands under said

channel plate, as she had been accustomed to do with the old machine, and that she did not know the danger of so placing her hands; and if the jury further find that on the said 21st day of January, 1907, the plaintiff was injured by placing her hands under said channel plate in the same manner as she was accustomed to do in safety with the old machines, then the verdict should be for the plaintiff, unless the jury further find that had the plaintiff exercised the care and caution that an ordinarily prudent woman with experience about machinery possessed by the plaintiff should have exercised, she would have discovered the danger of putting her hand under the channel plate of the remodeled machine, in which last case their verdict must be for the defendant."

There is one patent defect in that instruction—it assumed throughout that the defendant knew that the plaintiff and other operatives were accustomed to put their hands under the channel plate, for purposes of their own, and does not leave the question of the knowledge of the defendant to the jury. If it be conceded that such was the custom of the plaintiff and of some of the operatives, there was no such conclusive evidence that it was known to the defendant as to authorize the Court to assume that fact, or to make it unnecessary to submit it to the jury. The instruction is based on the theory that because such was the custom of the plaintiff the defendant was required to give her notice of the danger of doing so in the new machine, but there was no such duty on the defendant, unless it knew that such was her custom. For surely the defendant was under no legal obligation to warn the plaintiff, who was nearly twenty-one years of age and had been working on the old machines for a year and seven months, that she might be injured if she placed her hands under the channel plate, or any other part of the machine where there was no necessity to so place it in the performance of her duties, unless it had some reason to believe she would do so.

It does not require an unusual amount of intelligence to know that it is not prudent to place one's hand in a part of a machine that is not visible (especially when as in this case the

plaintiff knew that some changes had been made in the machine) and it is not requiring very much of a young woman nearly twenty-one years of age to stoop far enough to see whether it is safe to put her hand in a place, which she can see by stooping, and cannot see without doing. so. Even if we assume that there was testimony tending to show that some one connected with the defendant, whose duty it was to inform the plaintiff of the danger from such conduct, knew that she had been in the habit of using the space under the channel plate of the old machines, it would be extending the doctrine quite far to require such person to assume that the plaintiff placed her hand in that space without first looking into it. But regardless of that, the mere fact that the plaintiff was accustomed to place her hand there was not sufficient—it was necessary that the jury should also find, either that the defendant actually knew of the custom, or that it was so universal and notorious that it was presumed to have knowledge of it. We are not now speaking of the evidence in the record on that subject, but of the omission in the Court's instruction to submit the question to the jury. It was not a *concessum* in the case, but on the contrary the defendant denied that there was such custom and filed a special exception to the instruction on the ground that there was no evidence to establish it. It was not for the Court, but for the jury, to determine whether the defendant was aware of the custom, if it existed, and the evidence on the subject was certainly very meager.

. Ordinarily a servant assumes, as an implied part of the contract, all the natural risks and perils incident to the work he engages in, but "Where, however, the risks to which the servant is subjected are such, as he had not reason to believe, from the nature of his employment, he would have to encounter, and such risks arise from causes hidden or secret or such as would reasonably escape his observation, the master is bound to notify his servant, provided he himself knew or by the exercise of ordinary care ought to have known of them." *Wood* v. *Heiges*, 83 Md. 268. And "it is a well settled rule 'that if the operation of a machine involves danger

to an inexperienced person both justice and humanity impose upon the employer, when directing a youth without previous knowledge of the machine to work upon it, the duty of giving him such warning or instruction as would enable him to operate it safely by the use of that degree of care which might reasonably be expected of him.' " *Laundry Co. v. Kearney,* 97 Md. 17. But where there is no danger, other than such as is always incident to operating machinery, in running a machine for the purposes for which the servant was employed, the law does not place upon the master the duty to inform a servant of such age and experience as the plaintiff that it is dangerous to insert her hand in a place such as that spoken of—a place where there was no occasion for her to do so in the discharge of her duties—unless there be some peculiar reason for him to do so. If the master knew that it was the general custom of the operatives to use such space, and it was not originally dangerous but by changes made in the machine it had become so, to the knowledge of the master but without the knowledge of the servant, then it would be incumbent on him to so inform or caution the servant. But that would only be so if the master *knew*, or by reason of a universal and notorious custom was *presumed to know*, that the servant had been so using the machine in its original condition as to make it dangerous to continue such use of it, in its changed condition. It was therefore error in not submitting that question.

We think there was some evidence tending to establish a custom, and to show that the plaintiff was directed by Mr. Armiger, the defendant's foreman, to operate the new machine. The instruction does not say that *all* the machines were changed, and hence we are of the opinion that the special exceptions to the instruction, which relied on those grounds, were properly overruled. Although the language of the instruction is sufficiently clear to inform one accustomed to Court proceedings that it was intended to submit the various questions included in it to the jury, it could perhaps in some respects be made clearer, to avoid misleading the jury as to what they were called upon to pass on—especially in speaking

of the way in which the plaintiff and other operatives were ac-customed to put their hands under the channel plates.

The defendant's first prayer was properly rejected, as there was sufficient evidence to go to the jury, and the second was also, as it was proper under the circumstances to submit the question of contributory negligence to the jury.

Without discussing them separately, we find no error in the rulings presented by the first, second, third and fourth bills of exception and the fifth was abandoned.   The object was to show a custom on the part of the plaintiff and other operatives of so using the space under the channel plate as to call upon the defendant to instruct the plaintiff as to the danger of using it under the changed conditions, and, although it was not of much probative force in some respects—especially as to show-ing knowledge of the defendant of the alleged custom—the evidence was admissible, as having some tendency to establish the facts relied on.

For error in giving the instruction, as above pointed out, the judgment must be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs, above and below.*