AGNES HOCKADAY, et al., Trading as the Chesa-
peake Belting Company,

*vs.*

REGINA SCHLOER, Through Her Father and Next
Friend, Joseph R. Schloer.

*Prayers: sufficiency of evidence; taking case from jury;
amounts to a demurrer to the testimony of plaintiff.
Employer and employee: duty of employer;
concealed danger; assumption of risk;
duty to child employees.
Remarks by jurors.*

A prayer to instruct the jury to find a verdict for the defend-
ant, upon the ground that there is no evidence in the case
legally to show that he had failed in any of the duties which
he owed the plaintiff, as alleged in the declaration, amounts to
a demurrer to the evidence.                                p. 679

In passing upon such a prayer, the Court must assume the
truth of all the plaintiff's testimony, regardless of any contra-
diction in the evidence offered by the defendant.          p. 679

The weight of evidence is a question for the jury to deter-
mine.                                                      p. 679

In general, a servant assumes the risk of all open and obvious
perils incident to the service he undertakes.              p. 682

But in the case of a servant of tender years, who is unable
to appreciate or understand those perils from his own observa-
tion, it is the duty of the master to give him warning.    p. 682

A girl of 15, inexperienced in the use of machinery, had been
employed as a sweeper in a factory; she was assigned the posi-
tion of refilling with cotton the bobbins for a power sewing
machine, and feeding them to the machine; she had not been
warned that in feeding them to the machine she should do so
from the side, and not by reaching across certain rollers, which
were used to draw the fabric through the machine; upon reach-
ing across the said rollers, her fingers and hand were caught
and crushed: *Held,* that the case was one for the consideration

of the jury, whether the defendants were not negligent in not having warned her of the danger.                              p. 684

In general, an employer is not liable for defects in machinery as to which he knew nothing and of which he had no chance to be informed.                                           p. 684

A statement by a juror, made during a trial, that he could have attached to the machinery in question an attachment that would have prevented the injury complained of, should be excluded from the consideration of the jury, when there is no evidence that the injury arose because of the absence of such an attachment.                                             p. 685

A defendant has the right to have the jury confined to the issues as made by the pleading.                               p. 679

Evidence that machinery had been out of order on other occasions is not admissible, in a suit for damages because of injury by the machinery, unless, in some way, the injury complained of is connected with such defects.            p. 684

*Decided April 21st, 1915.*

Appeal from the Baltimore City Court.   (SOPER, C. J.)

The appellee, by her father, as her next friend, brought suit against the defendant for damages for injuries received through the defendants' negligence, resulting in the crushing of her fingers and hand, in a set of rollers in the defendants' belting factory. Judgment being for the plaintiff (the appellee) upon a verdict in her favor for $1,000, the defendants took this appeal.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Weems Williams* and *George Winship Taylor* (with whom were *Marbury, Gosnell & Williams* on the brief), for the appellant.

*Michael P. Kehoe* (with whom was *Robert W. Mowbray* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the right of action by an employee against her employer for personal injuries sustained while in the employer's service. So numerous have been the decisions of this Court in actions of this character that the principles governing them can be considered thoroughly established and render it entirely unnecessary to look for adjudicated cases in other jurisdictions.

At the close of the case the appellants offered two prayers, among others, asking the Court, in the first, to instruct the jury to find a verdict for them upon the ground that there was no legally sufficient evidence to show that they had failed in the performance of any of the duties which they may have owed the plaintiff, as alleged in the declaration; and in the second, to rule as a matter of law that the plaintiff was guilty of contributory negligence. The Court refused both of these prayers and submitted the issues for the determination of the jury. In considering the first of these prayers, which constitutes a demurrer to the evidence, it is hardly necessary to say that the Court is to assume the truth of the plaintiff's testimony, regardless of any contradiction in the evidence offered by the defendant, however strong and convincing that may be; for the weight of the evidence is solely to be judged by the jury. Since this prayer raises the right of the plaintiff to recover under the allegations of the declaration, it will be necessary to examine the declaration, for it is the settled law that the defendant has the right to have the jury confined to the issues made by the pleadings. *City Pass. Ry. Co.* v. *Nugent,* 86 Md. 360; *Fletcher* v. *Dixon,* 107 Md. 420.

By the declaration, it is alleged that the plaintiff, a girl under fourteen years of age, was employed by the defendants, a co-partnership, and put to work on and around certain sewing machines and a certain bobbin winding machine, without being properly cautioned as to the dangers attending the working in and around said machines, and having been given no instruction, caution nor warning, which an inexperienced

employee of her age was entitled to receive. That on a cer-
tain day, while so employed, the plaintiff dropped a bobbin
which fell beyond a set of rollers, with which one of the
sewing machines was equipped, and that in reaching over the
rollers to recover the bobbin, the fingers of the plaintiff's right
hand were caught and drawn between the rollers and crushed;
that as her fingers were being drawn between the rollers, the
machine was stopped, but before she could extricate her
fingers, the rollers, because of the defective and unsafe con-
dition of the machinery, were again set in motion, and the
hand drawn through the rollers to the wrist. The negligence
of the defendants is again specifically charged in that, (1)
the plaintiff was not instructed, cautioned and warned as to
the dangers attendant upon the operation of the machinery;
(2) in not providing safe and suitable machinery, and (3)
in starting the machinery again after the plaintiff's fingers
were caught and before they could be extricated.

The proof offered by the plaintiff showed that the appel-
lants owned and operated a factory where belting for the run-
ning of machinery was manufactured from canvas. The
plaintiff, under fourteen years of age and with the certificate
of the Bureau of Statistics, entered the employment of the
appellant about three months before the day of the accident.
She worked during the first month as a sweeper, and then
was assigned to the sewing room as a bobbin winder. Bob-
bins are small steel spools about an inch and a half in length
upon which the cotton used in sewing was wound. In the
sewing room were five large sewing machines and a bobbin
winding machine. The duty of the plaintiff consisted in
getting the empty bobbins from the sewing machines, taking
them to the winder and returning them, when filled, to the
sewing machines. All of the machinery in this room was
run by steam power by means of shafting along the ceiling
and conveyed by belting to pulleys on the machines. The
sewing machines were equipped with two needles so as to
sew a double row in the belting. The belting after running

under the needles, was carried away by means of two rollers of six inches in diameter, placed one above the other at the back of the machine and about eight inches from the needles. When in operation, these rollers revolved slowly—about six revolutions to the minute. The whole machine, including the rollers was controlled by means of a lever at the side of the operator. In starting the machine, the belting running from the shafting to the pulleys at the side of the machine was pushed by means of the lever from the loose pulley to the fixed pulley, and thus, the power conveyed to the machinery. To stop, the lever was pushed in the opposite direction, thus throwing the belting back to the loose pulley. There was no receptacle to hold the surplus bobbins on the machine on which the accident occurred. After working for a month as a sweeper, the plaintiff was sent to the bobbin winder to be taught how to wind bobbins. For two or three days she worked with her, learning how to wind bobbins, and during that time carried the bobbins back and forth. No caution or warning of any kind was given to her as to any danger that might be encountered in the act of delivering the bobbins; and, that, although the aisles on each side of the machine were open, and the bobbins could have been delivered at the side of the machine, the plaintiff testified she had been instructed to deliver them at the back, reaching over the rollers to do so. And the girl who instructed her testified that, although she had on several times seen the appellee placing the bobbins over the rollers, she had never cautioned her against doing it, for she, herself, did not appreciate that there was any danger.

The plaintiff described the circumstances of the accident as follows: "I took the bobbins from her machine and took them to my bobbin table and wound them, and then, when they were finished, I took them over to her machine, and then I put them down on the machine, and the machine shook, and shook the bobbins over to the roller, and then I went over to reach for them and my fingers went through the machine.

through the roller.   After my fingers were caught in the
roller, they were only in there really a little bit, and I hol-
lered, and she stopped the machine, and the machine started
off again and then it went all the way up to there (indicating
the wrist), and then I hollered again and she stopped the
machine and Mr. Arthur came and got my hand out with a
crowbar." There was testimony to the effect that after the
accident, the machine was operated, and several times the
lever, used to shift the belting on the pulleys, moved and at
different times both started and stopped the machinery, and
that this was caused by reason of the fact that the lever was
loose and thus defective.   The only other testimony as to the
machine being in a defective condition was testimony that
one or two weeks before the accident, one of the partners and
the machinist were fixing it; but the witnesses did not attempt
to say what repairing they were doing to it or what if any
part was out of condition.

The duty owed by the employer to an employee when that
employee is a person of immature years has been the cause
of many expressions by this Court, and in some very recent
cases.   CHIEF JUDGE McSHERRY in *Levy* v. *Clark,* 90 Md.
146, probably expresses the rule as clearly and comprehen-
sively as it is anywhere stated, and it is certainly the rule in
this State as established by both prior and subsequent deci-
sions.   "Ordinarily, it may be laid down as the general rule
that the servant assumes the risk of all open, obvious and
apparent perils incident to the service he undertakes.   This
rule is qualified when the servant, by reason of tender years,
is unable to appreciate or understand those perils from his
own observation.   In such instances, it becomes the duty of
the master to warn the servant of the existence of the dan-
gers, which, though visible to others, are not evident to one
of immature years—and are not evident to him because of his
want of capacity, growing out of that immaturity, to himself
appreciate or comprehend them.   The duty to warn a child of
the dangers incident to a hazardous employment does not

arise when the child, though young and inexperienced, actually knows the peril."

The facts in the above cited case are wonderfully similar to the one we are considering. A girl of fifteen years was put to work in a laundry, upon a dampening machine and was told to put pieces of laundry through the roller with which it was equipped. The machine was equipped with a guard to protect the hand from coming in contact, but on the day of the accident the guard was off. No warning was given the plaintiff as to the danger of the fingers being caught. And in an action for injuries resulting from the hand being caught between the rollers, this Court held, that as to this girl of fifteen years, the close running rollers were not a warning of danger, or in the words of the opinion "the danger of injury was not open, obvious or apparent to one so circumstanced." To like effect was the recent case of *Coughlin* v. *Blaul,* 120 Md. 28, quoting with approval the case of *Levy* v. *Clark, supra,* in which a boy of eleven years of age was injured in a meat chopping machine. While it is true the liability of the defendant was denied on certain other grounds, yet the absence of warning and caution of the dangers was emphasized as an act of negligence, for which the defendant would have been liable for any injury directly resulting therefrom. See case of *Chambers* v. *Woodbury Mfg. Co.,* 106 Md. 501, for a strong statement as to the duty of employers to warn employees of immature years in reference to dangers that may not be appreciated through such immaturity.

According to the plaintiff's testimony, no warning was given to her as to any injury that might result to her from coming in contact with the rollers. The rollers were very slow moving and it was natural for a girl of her age and absolute inexperience with machinery not to appreciate that there was serious danger lurking there. Most of the cases have dealt with injuries to persons operating machines; but if the performance of one's regular duties take a person of

immature years constantly about dangerous machinery, it is equally the duty of the master to warn him as well as the actual operator. We are of the opinion that the lower Court committed no error in refusing this instruction, and submitting to the jury the facts as to warning.

On the question of whether there was negligence upon the part of the defendants in there being a defective lever, resulting in the machine being thrown in gear after it had once stopped, we are of the opinion the ruling of the lower Court was correct. While it is true there was testimony showing the lever was out of order after the accident, still there is not a particle of testimony tending to show that the appellants knew or by the exercise of reasonable care could have known that this part of the machine was defective, and that is the measure of care required towards one situated as this appellee was. *National Enameling Co.* v. *Brady,* 93 Md. 646. It is true there was testimony tending to show that one or two weeks prior to the accident the appellant's agents were "fixing" the machinery, but there is a total absence of what was being fixed or that the part now claimed to be defective was ever defective before, or that reasonable care would have discovered it.

It is apparent from what we have expressed above that we are of the opinion that the Court was correct in refusing to instruct as a matter of law that the appellee was guilty of contributory negligence. Under the facts it was proper that the question should have been left to the jury.

There was, however, one ruling made upon the prayers which we think constitutes reversible error. During the taking of testimony, the appellants had in Court for illustrative purposes a model of one of the sewing machines. While the machinist of the appellant was testifying a juror interrogated him, using the model to illustrate. The substance of his inquiries was as to whether there was a guard over the rollers, and upon being answered in the negative, inquired why. The witness answered that because of the construction of the machine it was impracticable to use one. The juror

thereupon volunteered the information that he could put one on that would be practical and at the same time prevent any one's fingers from getting in contact with the rollers.

The plaintiff, by her declaration, had made no specific reference to the absence of a guard; nor was there a particle of testimony offered as to this being an element of negligence, either before or after the questions by the juror. The appellants offered a prayer, the thirteenth, asking the Court to instruct the jury that there was no evidence in the case to show that the absence of a guard caused the accident, and that they could not consider the absence of a guard in arriving at a verdict. The Court refused this instruction, and in this we think there was error. It is too plain for argument that the jury could not consider the information given by the juror. It may be that they did not, but the Court could not say that they would not, nor can we say, in fact, they did not use it. It is certain, from the record, that one juror, at least, had the idea firmly in his mind that the absence of a guard was negligence and was the cause of the injury; and the appellants were entitled to this instruction, as a protection against that which had become a vital point in the case. It is possible the jury disregarded the whole of the plaintiff's testimony, because there was a strong conflict, and yet based their verdict upon the absence of the guard. We are not able to say they did not, and so great injury may have been done the appellants.

The appellants offered several prayers, dealing with contributory negligence, only one of which was granted. We think the seventh should also have been granted, although we might not have considered its refusal reversible error, still as the case has to be retried, we think it advisable to call attention to it. The prayer is predicated upon the facts surrounding the accident as testified to by the operator of the machine where the accident occurred and contains a sound proposition of law.

Because of the refusal of the thirteenth prayer we will reverse the judgment.

> *Judgment reversed with costs to the appellant, and new trial awarded.*