BAUMAN, Etc., et al. *v.* WOODFIELD,
Etc., et al.

[No. 393, September Term, 1965.]

212

*Decided October 21, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Alger Y. Barbee* and *R. Edwin Brown* for appellants.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, H. Algire McFaul, Alfred H. Carter* and *Simpson & Simpson,* on the brief for Joseph P. Dorr, et ux., part of appellees. *Joseph S. McCarthy,* with whom was *James T. Wharton* on the brief, for Bradley M. Woodfield and Henry H. Woodfield, etc., other appellees.

MARBURY, J., delivered the opinion of the Court.

Leonard C. Bauman, an infant, by Carl M. Bauman his father and next friend, and Carl M. Bauman, individually, brought

a tort action against Bradley M. Woodfield and Henry H. Woodfield, individually and trading as B. M. Woodfield & Son, and against Joseph P. Dorr and Ann C. Dorr, landowners. Trial was held before a jury, Judge Ralph G. Shure presiding, in the Circuit Court for Montgomery County. The trial judge directed a verdict in favor of the Dorrs, defendants-appellees, at the conclusion of the plaintiffs-appellants' (Baumans') case and denied a motion for a directed verdict on behalf of the defendants-appellees Woodfield, made at the conclusion of the plaintiffs' case and at the close of all of the evidence. From the judgments entered for the defendants as the result of the granting of the motion for directed verdict in favor of the Dorrs and the verdict of the jury in favor of the Woodfields, the appellants have taken this appeal claiming error in granting the motion and other errors allegedly committed during the trial.

Mr. Carl M. Bauman, the father of Leonard, owned a 300 acre farm in Frederick County, Maryland, and 22 acres of land near Burtonsville in Montgomery County, Maryland, on which he and his family lived and farmed. In 1958, approximately two years prior to the accident in which Leonard sustained injury, his father purchased a used 1950 model 8N Ford farm tractor from the Woodfields who operated a Ford dealership at Damascus, Maryland. At the time of the purchase the father, accompanied by his son, bought the tractor with the understanding that the son, then nearly fifteen years old, would use it since it was a common practice for boys who lived and worked on farms to operate tractors. All this was made known to the Woodfields. The tractor was purchased with a drawbar and a mower. Before the purchase was made, the tractor, with the mower attached, was demonstrated in action to the father and the son on a small plot of ground near the dealership. Both father and son were instructed in the maintenance of the tractor and on how to attach and unattach the mower and drawbar. The son asked a number of questions. This was the extent of the instructions. The father requested a manual which usually comes with new tractors, but the Woodfields did not have one for that tractor since it was used. However, they promised they would try to obtain one but never furnished it. After the purchase but before the accident, the father made several fruit-

less requests for the manual when he was in the vicinity of the dealership. Finally, the father obtained one directly from the manufacturer just before the trial, which was held nearly four years after the accident.

The tractor was purchased primarily for use on the Frederick County farm, and the minor, Leonard, operated it there on occasions. Leonard had had some previous experience in driving a Farmall cub tractor which his father also owned. The senior Bauman gave Leonard some instructions on the use of the Ford tractor and permitted him to operate it after a few months. Later, when the Ford tractor was brought to the Burtonsville farm, Leonard used it in mowing, plowing, and other general work for neighbors to earn income during his free time from school. He had been doing work for other people with the tractor over a period of a year and a half before the accident. He was paid by the hour, kept his own time, and set his own hours. When he used the father's tractor he charged an extra amount for its use and supplied the gasoline.

When Leonard was injured on August 18, 1960, he was pulling old fence posts out of the ground with the Ford tractor for Mr. Dorr. He had worked for him on previous occasions and had used the Ford tractor and Mr. Dorr's small cub tractor several times. Sometimes Mr. Dorr, who was primarily in the manufacturing business and raised ponies on the side, worked with Leonard while Leonard was working for him. Mr. Dorr, feeling that his small tractor was not sufficiently powerful, engaged Leonard to bring his father's Ford tractor for the purpose of removing an old fence. He pointed out where the fence was and what was to be done with respect to its removal. The fence was located over a hill, completely out of sight of the Dorrs' house and some distance from it.

Leonard worked unaccompanied. On the first day of pulling out the fence posts a steel cable supplied by Mr. Dorr broke and caused Leonard thereafter to keep watch over his shoulder for the cable when pulling in order to avoid whiplash from the cable if it should break again. He began to extract the posts by first burning off the undergrowth with gasoline, then he would nudge a post to be removed with the tractor if it needed loosening. Finally, he would wrap or tie one end of the cable

to the post and the other end to the rear of the tractor and pull out the post. When the accident occurred the cable was attached to the top link, a part of the hydraulic system located on the central housing behind and below the driver's seat, or to the axle itself. The evidence was not very clear on this point. In any event, this particular use of the tractor—pulling with the cable attached to the upper part of the tractor—was unsafe because the center of gravity was too high thus causing the front end of the tractor to rise and overturn. When he was injured, Leonard was not using the drawbar. The drawbar, which is used for towing and pulling, is designed to keep the center of gravity low thus preventing the front end of the tractor from rising. Both Leonard and his father testified that neither knew the safety function of the drawbar other than as an attachment for towing and pulling.

By noon of the second day he had extracted nearly two-thirds of the posts. He was working on his second or third post after lunch when, because the cable was attached to such a high point on the tractor and the post failed to come out of the ground, the resistance from the post caused the front end of the tractor to rise off of the ground and to rotate about the rear axle so that the tractor completely turned over on top of Leonard pinning him to the ground and injuring him seriously. Leonard, who had been watching the cable, sensed the front end rise. When he looked around and saw the front end off the ground, he instinctively reached with his foot for the clutch to disengage the gears but his foot slipped off. The tractor continued to pull against the post and finally turned over. At the time of the accident Leonard was sixteen and one-half years old.

## THE CASE AGAINST THE DORRS

The plaintiffs contend that the lower court did not understand the nature of Leonard Bauman's employment,[1] and that the

---

1. In directing the verdict for the Dorrs, the lower court stated, in part: "Now, whether he was an independent contractor or not, I am not convinced one way or the other, but certainly it was an unusual type, separate and distinct contract." However, the lower court reviewed the evidence and found that it was not sufficient to show that the Dorrs had any notice of any defects or dangers and that they had no reason to know that the boy would perform his task improperly.

evidence presented against the Dorrs at the conclusion of the plaintiffs' case was sufficient to create a prima facie case of negligence. In their brief the plaintiffs Bauman argued that if Leonard was an independent contractor the duty owed to him by the Dorrs was entirely different than if there was a master-servant relationship.

It is axiomatic that actionable negligence is the breach of a duty that is owed to another. If no duty is owed, then no action can be sustained even though an injury has occurred. *Hettchen v. Chipman,* 87 Md. 729, 41 Atl. 65. In order that an act or omission may be regarded as negligent, the person accused of negligence must have known or should have known that danger was involved in such act or omission or that the instrumentality or property causing the injury was in some way defective or dangerous. *Adams v. Carey,* 172 Md. 173, 190 Atl. 815. It is the general rule that the servant holds himself out as being capable of doing the work he undertakes to do, and that he assumes the risk incident to the employment. *Hockaday v. Schloer,* 125 Md. 677, 94 Atl. 526; *Crown Cork Co. v. O'Leary,* 108 Md. 463, 69 Atl. 1068; *Buttner v. Steel Car Co.,* 101 Md. 168, 60 Atl. 597. However, it is the affirmative duty of an employer in a master-servant relationship to provide his employee with a reasonably safe place in which to work and to warn and instruct his employee concerning the dangers of the work known to him which are not obvious and can not be discovered by the exercise of reasonable care by the employee. This duty is relative and conditional, and what would be a full discharge of the duty under one set of circumstances may not be under another. The duty to warn or instruct depends upon the age, understanding, and experience of the employee and upon the nature of the work. Where the employee, by reason of his youthfulness or inexperience, is unable to comprehend the dangers of the work or where the dangers are of such nature as to give reasonable grounds for believing that they are not known to such employee or would not be discovered after a reasonable time, and they are actually or constructively known to the employer, the failure of the employer to warn the employee is a breach of his duty. *Royster Guano Co. v. State,* 130 Md. 170, 100 Atl. 104; *Booth Packing Co. v. Greuner,* 129 Md.

392, 99 Atl. 714; *Hettchen v. Chipman, supra; Michael v. Stanley,* 75 Md. 464, 23 Atl. 1094.

The contractee has a similar duty to warn an independent contractor of dangerous working conditions about which the contractee actually or constructively knows and the contractor could not reasonably discover. In *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 19-20, 40 A. 2d 43, where suit was brought by employees of an independent contractor to recover for injuries alleged to have been caused by the failure of the contractee to warn plaintiffs that electrical wires were dangerous, this Court affirmed the directed verdict for the defendant and approved this rule as follows:

> "In 1869 Judge Alvey announced the general rule in *Deford v. State, to Use of Keyser,* 30 Md. 179, 205, that a property owner must exercise care that his property is so used and managed, whether by his own servants or by an independent contractor, that the mode of conducting his work will not cause injury to servants or other persons. But the property owner who invites other persons to come upon his premises is not an insurer of those persons against every possible accident. He must exercise merely such care as a reasonably careful and prudent person would exercise to guard against dangers under the circumstances so as to make the premises reasonably safe. He will not be held liable for injuries resulting from dangers which are as obvious or familiar to the person injured as to him. It is only when there is some concealed peril, known to the owner but not known to the person injured, which he has failed to warn against, that he will be held responsible."

In the case before us as to the Dorrs, plaintiff Leonard Bauman had nearly two years of experience with his father's Ford tractor on his father's farms and elsewhere. The boy had previously mowed, plowed, and towed with his tractor, had used the drawbar on several of these occasions, and, in fact, knew how to rig and to unrig it. He had also had experience with smaller tractors. He advertised his services by word of mouth

and held himself out as being capable of doing the work he undertook to do. When he orally contracted to remove the fence posts for Mr. Dorr, he gave no indication that he had never done this type of work nor that he did not know the proper use of the tractor for pulling with a cable. He testified at the trial that he had never been instructed on what to do if the tractor's front end raised off the ground, yet at the time of the accident when he saw the front end of the tractor rising, he knew enough instinctively to try to disengage the gears by depressing the clutch pedal.

In contrast to the amount of evidence concerning Leonard Bauman's experience with farm tractors, there was no sufficient evidence to show that the Dorrs had any superior knowledge regarding the use of the tractor, or any knowledge of the correct manner of pulling fence posts out of the ground with a tractor, or knowledge that Leonard Bauman might do so in an improper manner. Mr. Dorr was in the manufacturing business and his wife was a housewife. Together they raised ponies on their 28 acres.

We hold that in light of Leonard Bauman's experience with tractors and his holding himself out as capable of performing the work, the Dorrs, who had no reason to question his capabilities or his experience concerning the use of the tractor, had no duty to warn or supervise him under either a master-servant or contractee-independent contractor theory. Therefore, under either theory the court below was correct in granting the Dorrs' motion for a directed verdict.

Appellants also contend that the lower court, by granting a directed verdict for the defendants Dorr at the close of the plaintiffs' case thereby adversely affecting their case against the defendants Woodfield in the eyes of the jury, erred in not reserving its decision under Maryland Rule 552 c. Appellants have shown no prejudice. In negligence cases, it is incumbent upon the plaintiff to produce some evidence that the defendant violated some duty by his act or omission and thereby caused the injury. *Brehm v. Lorenz*, 206 Md. 500, 112 A. 2d 475; *Sullivan v. Smith*, 123 Md. 546, 91 Atl. 456. Since the circumstances of this case permit only one inference—that the Dorrs owed no duty to warn or supervise Leonard Bauman,

we perceive no reason why a directed verdict should not have been peremptorily granted. *Richardson v. Boato,* 207 Md. 301, 114 A. 2d 49; *Garozynski v. Daniel,* 190 Md. 1, 57 A. 2d 339.

## THE CASE AGAINST THE WOODFIELDS

Plaintiffs Bauman assign as an error the lower court's construction of Maryland Rules 413 a 2 and 413 a 4 with respect to allowing defendants Woodfield to read into evidence in their case parts of plaintiffs' pretrial depositions and, further, to disallowing plaintiffs' counsel to read other portions of those depositions so as to complete the context thereof.

Near the end of the case of the Woodfields, their counsel moved to read into evidence selected portions of the pretrial depositions of Leonard and Carl Bauman under Rule 413 a 2. The offering was made on the basis that the plaintiffs were adverse parties to these defendants and that the evidence was "suggestive evidence in support of the defense." When certain portions of the depositions were read, the plaintiffs objected on the ground that they were repetitious. In some instances the court sustained their objections. The plaintiffs did not then nor thereafter request that counsel for the defendants Woodfield read any other parts of the depositions which they claimed were relevant to the parts introduced, nor did they suggest to the lower court any parts which they contended were relevant. After the parts of the depositions were read the Woodfields rested their case. Plaintiffs then attempted to offer in rebuttal the deposition of Leonard Bauman as evidence under Rule 413 a 4 on the theory that since the plaintiffs' depositions were offered by the defendants, the plaintiffs, being adverse parties, should have the right to read other portions of the depositions into evidence to complete the context. This was denied by the lower court. Counsel for the plaintiffs then called Leonard Bauman to testify in rebuttal.

Rule 413 a 2 states, in essence, that at the trial or upon the hearing of a motion, any part or all of a deposition of a party, so far as admissible under the rules of evidence, may be used *by an adverse party for any purpose.* "Adverse party" as used in this rule means a party to an action on the opposite side of an issue raised by the pleadings. In this case, the Woodfields,

as indicated by the pleadings, were on the opposite side of the Baumans. "Any purpose" as used in the rule does not mean that the use of the deposition is limited to purposes of impeachment or contradiction. *Billmeyer v. State, Use of Whiteman*, 192 Md. 419, 64 A. 2d 755, and does not mean that the rules of evidence may be ignored. When the two sections of the rule are read together, it necessarily follows that "there must be a legitimate purpose in the use of the deposition as there must be a lawful purpose in the offering of other evidence." *Martin v. Arundel Corp.*, 216 Md. 184, 194, 140 A. 2d 146. Rule 413 a 2 is very similar to Federal Rule of Civil Procedure 26 (d) (2). Under Fed. R. Civ. P. 26 (d) (2) an adverse party is permitted to use a party's deposition for "any purpose," and this provision permits the party to introduce, as part of his substantive proof, the deposition of his adversary, notwithstanding the latter has already testified at trial. *Pursche v. Atlas Scraper & Engineering Co.*, 300 F. 2d 467 (9th Cir. 1962) ; cert. den. 371 U. S. 911, 9 L. Ed. 2d 170; reh. den. 371 U. S. 959, 9 L. Ed. 2d 507. Thus, the admission in evidence of portions of a party's deposition after he had testified on direct and cross-examination would be in accordance with Fed. R. Civ. P. 26 (d) (2) subject to the trial court's right to exclude such parts as might be unnecessarily repetitious in relation to the witness' testimony on the stand. *Merchants Motor Freight v. Downing*, 227 F. 2d 247 (8th Cir. 1955). See also 23 Am. Jur., 2d, *Depositions and Discovery*, Section 106.

Under Maryland Rule 413 a 2 defendant may put plaintiff's deposition in evidence as part of the defendant's case, so far as the deposition is admissible and relevant. The record shows that the parts of the plaintiffs' depositions read dealt in the main with the Baumans' previous experience with tractors. In light of this evidence and for the reasons as stated above, we hold that the lower court committed no error in allowing defendants to read portions of the plaintiffs' depositions into evidence. *Snowhite v. State, Use of Tennant*, 243 Md. 291, 306-10, 221 A. 2d 342.

There is no doubt that under Rule 413 a 4 the party reading the adverse party's deposition may be required by the adverse party to read all relevant parts of the deposition to con-

tinue the context. *Thomas v. Hudson Motor Car Co.*, 226 Md. 456, 174 A. 2d 181. The adverse party must request that the party be required to read parts relevant to those read in order to continue the context or must suggest to the trial court those parts to be read. See *Kuenne v. Kuenne*, 219 Md. 101, 148 A. 2d 448. Plaintiffs Bauman did neither.

However, we need not decide for the purpose of this case whether or not the court below committed error in not permitting counsel for the plaintiffs to read plaintiffs' depositions in rebuttal since the plaintiffs called, without objection, Leonard Bauman to testify in his own behalf in rebuttal. Thus plaintiffs had full opportunity to elicit any testimony to explain, modify or clarify a claimed admission, contradiction or inconsistency in the testimony introduced from the prior depositions. Under these circumstances the error, if any, was harmless. *Snowhite v. State, Use of Tennant*, 243 Md. at 310-11; *Maszczenski v. Myers*, 212 Md. 346, 129 A. 2d 109.

At the close of the case, appellants submitted fourteen written prayers to the court below. They claim that each prayer was discussed in the judge's chambers. However, no record was made of the conversations and discussion which took place in the chambers as it was the normal procedure in the Circuit Court for Montgomery County not to do so. The trial judge rejected all of the appellants' prayers, but indicated at that time that he would cover six out of the fourteen prayers in his instructions to the jury. The rest of appellants' prayers, which were not to be included in the court's instructions to the jury, were so marked and filed with the original proceedings. At the conclusion of the court's instructions to the jury, counsel for appellants excepted to the court's failure to give certain prayers, but counsel referred to them by number only and failed to state the substance of the prayers excepted to and also failed to state any specific grounds for his exceptions. The following is an illustrative part of the dialogue between the trial judge and appellant's counsel on this matter:

> "Mr. Brown: We except to the Court's failure to give the plaintiff's proffered Prayer No. 1, plaintiff's proffered Prayer No. 2.

> The Court: This means nothing. You have nothing in evidence. You are just giving it to me.
>
> Mr. Brown: To shorten down the plaintiff's Prayer No. 1 previously exhibited to the Court, would that clarify that?
>
> The Court: I'll help you get the record.
>
> Mr. Brown: The plaintiff's Prayer No. 2, previously exhibited to the Court.
>
> The Court: Go ahead. I'll help you straighten it out. Is there any key item? You be sure and say so.
>
> Mr. Brown: Plaintiff excepts to the Court's failure to give the plaintiff's proffered Prayer No. 4. Did you give this prayer written down? * * *."

It is obvious that the counsel for appellants gave no more informative statement of the grounds of the exceptions than mere references to the numbers of the instructions which the appellants contend should have been given. It has often been held that this is not a sufficient compliance with Rule 554 d to permit review of the instructions. *Shafer v. Bull,* 233 Md. 68, 194 A. 2d 788; *Belt's Wharf v. Internat. Corp.,* 213 Md. 585, 132 A. 2d 588; *Balto. & Ohio R. Co. v. State,* 169 Md. 345, 181 Atl. 830.

Appellants attempt to excuse their failure to refer to substantive parts of the instructions and to give grounds for exceptions thereto by claiming reliance on the trial court's offer of aid to get the record straight. But there is no evidence that appellants followed up this offer. Rule 554 d places the duty upon a party to have his exceptions to instructions and the reasons therefor entered in the record since it is provided that "opportunity shall be given to make the objection in open court * * *" Rule 554 d. Appellants had the opportunity to make exceptions and to state the substance thereof and the grounds therefor in open court, but failed to do so. They also failed to take advantage of the trial court's offer of assistance in this matter. Since there is nothing in the record, other than numerical references to requested instructions, to indicate which portions of the instructions *given* or *omitted* they excepted to and grounds therefor, this Court has nothing upon which it may base its re-

view. *Balto. & Ohio R. Co. v. State, supra;* Rules 554 e and 885.

Appellants made a general exception to the instructions of the trial court on the ground that the instructions "seemed to be more slanted toward the defendant in what little bit of reference was made of the facts." We hold that "[t]his is merely a general objection to the whole charge, without any specifications as to the particular parts. Of course, the exception must state distinctly the portion of the charge to which the objection is made." *Maszczenski v. Myers,* 212 Md. 346, 356, 129 A. 2d 109. In that case, appellant contended that the trial court committed error in its charge to the jury because "the very tenor of the Court's charge in general was prejudicial to the plaintiff's cause."

Appellants specifically excepted to the trial court's instructions regarding the operator's manual for the tractor. Appellants contended that the trial court erred in instructing that the provisions in the manual relating to dangerous conditions were not to be considered as expert knowledge as coming from the Woodfields, but only as a publication of the Ford Motor Company. We hold that the court's instruction in this regard was not reversible error. The plaintiffs had the benefit of the admission into evidence of certain portions of the manual. Expert witnesses testified that the parts of the manual which were introduced were reliable as an authority on the subject of the conditions under which a tractor becomes inherently dangerous. The parts were considered as a reliable source of information coming from the Ford Motor Company and not from the Woodfields. Although as dealers in goods manufactured by another, the information contained in the manual was imputed to the Woodfields, Restatement, Second, *Torts,* Section 401, the manual was not their sole source of knowledge concerning tractors. Their knowledge in this field also came from their experience in and practice of this type of business.

Appellants also contend that the trial court erred in refusing to allow *per diem* and *ad damnum* arguments. It was pointed out in *Jimmy's Cab v. Isennock,* 225 Md. 1, 169 A. 2d 425, that it is not an unusual practice in this state to allow the pleadings, including the declaration containing the *ad damnum* clause,

to be taken to the jury room. See Rule 558. However, where the court, within its discretion, does not allow pleadings to be taken to the jury room and where counsel either intentionally or unintentionally mentions the *ad damnum* in his opening or closing argument to the jury, the trial court should point out to the jury that counsel's argument is not to be considered as evidence and that the jury must base its verdict on the evidence presented at the trial and on the law. See also *Nicholson v. Blanchette,* 239 Md. 168, 210 A. 2d 732. It is permissible for counsel to use a *per diem* argument in his opening or closing statement to the jury. However, when used, this argument should be accompanied by instructions to the jury that the argument is not evidence and that the jury must determine the proper verdict from the evidence presented at the trial and on the law. The trial judge may make such instructions upon request or *sua sponte* if he thinks proper. Where the *per diem* argument is made for the first time in closing, the opposing counsel should be allowed a reasonable time to rebut it. *Simco Sales v. Schweigman,* 237 Md. 180, 205 A. 2d 245; *Eastern Shore P.S.C. v. Corbett,* 227 Md. 411, 177 A. 2d 701; *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661. See also *Lebow, Etc. v. Reichel,* 231 Md. 421, 190 A. 2d 642. Since it is only permissible for counsel to use a *per diem* argument the trial court did not err in disallowing such argument.

*Judgments affirmed, appellants to pay the costs.*