EDWARDS *v.* CHISOLM, ET AL.

[No. 323, September Term, 1966.]

Decided May 3, 1967.

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Kenneth R. Hammer,* with whom was *Sidney Blum* on the brief for appellant.

*Richard H. Lerch,* with whom were *Patrick G. Cullen* and *Lerch & Huesman* on the brief for Marvin Ronald Chisolm, one of appellees; *Phillips L. Goldsborough, III,* with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief for Laura B. Tibbs, Administratrix C.T.A. of the Estate of Clyde Vernon Tibbs, other appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant, Hubert Edwards, brought suit in the Circuit Court for Baltimore County for injuries allegedly sustained in an automobile accident. He was a passenger in an automobile driven by Clyde V. Tibbs, which was involved in a chain-re-action collision with three other automobiles. The case was tried before a jury, Judge Proctor presiding, and motions for directed verdicts were granted in favor of the appellees Marvin R. Chisolm and Leonard M. Pruitt, drivers of two of the other automobiles involved. A verdict in favor of the administratrix, c.t.a. of the estate of Clyde V. Tibbs was returned by the jury. From the judgments entered upon the verdicts, Edwards has appealed.

The accident occurred on January 4, 1959, on State Route No. 7, a two lane highway in Baltimore County. It was a clear and dry afternoon. One of the appellees, Chisolm, was driving north on Route 7, at a speed of approximately forty miles per hour when he came upon a Nash automobile proceeding in the same direction at about thirty miles per hour. Chisolm followed the Nash for approximately a half mile when suddenly, for no reason observable to Chisolm, the Nash stopped. Apparently, the driver of the Nash stopped to avoid an unidentified shaggy dog. Chisolm collided with the rear of the Nash, but the driver of the Nash drove off and stopped about 100 yards from the point of impact and checked the damage to his automobile. He then left the scene of the accident before he could be identified.

The driver of the second automobile, Pruitt, saw the brake lights of the Chisolm car flash. Pruitt was driving at about thirty to thirty-five miles per hour in the same direction as Chisolm, and to his rear. Pruitt was able to bring his automobile to a stop three or four feet to the rear of the Chisolm car. A few seconds after it stopped, the Pruitt automobile was struck in the rear by a vehicle driven by Clyde V. Tibbs in which appellant was a passenger.

Prior to the accident, Pruitt, Tibbs, and appellant had been at an inn where they drank beer together. Pruitt left in his automobile, and Tibbs followed almost immediately behind him. The accident occurred about two miles from the inn. Appellant testified that Tibbs drove for about a mile at the speed of fifty to sixty miles per hour and that not until approximately 100 feet from the point of impact did he tell Tibbs to slow down because Tibbs was going too fast for the distance he was traveling behind the Pruitt automobile. Appellant stated that the reason he had not warned Tibbs sooner was that he had not gotten around to it.

Tibbs did not stop in time to avoid colliding with the rear of the Pruitt automobile which had stopped suddenly to avoid collision with the Chisolm car. The force of the blow of the Tibbs vehicle drove the Pruitt automobile into the rear of the Chisolm car. Appellant claimed that the blow caused him to strike his head on the dashboard, but he made no complaint of injuries to the investigating officer or to Tibbs at the time of

the accident. Nor did he seek any medical attention. Some time thereafter he experienced headaches, dizziness, and forgetfulness. Several days after the accident, while at work, he "blacked out" and was taken to a hospital for treatment.

Appellant contended that the court erred in granting the motions for directed verdicts in favor of Chisolm and Pruitt and that he was prejudiced thereby in his remaining case against Laura B. Tibbs, administratrix.

The driver of the front car must exercise ordinary care not to stop or slow up without giving the driver of a following car adequate warning of his intention so to do. Code (1967 Repl. Vol.), Article 66½, Sections 228 (c) and 229. Whether due care in giving adequate warning was exercised by the slowing or stopping front vehicle is a question for the jury except when the case is one where reasonable minds do not differ. *Kline v. Kane,* 246 Md. 19, 226 A. 2d 894; *Hillebrecht v. Stein,* 245 Md. 93, 225 A. 2d 44; *Yellow Cab Co. v. Bonds,* 245 Md. 86, 225 A. 2d 41; 29 A.L.R. 2d 5; 2 Blashfield, *Automobile Law and Practice,* Section 113.11, page 704.

Chisolm did not act unlawfully in attempting to stop in order to avoid colliding with the Nash, however, he may have been negligent in striking the rear of the Nash. See Code (1967 Repl. Vol.) Art. 66½, Section 224 (a) ; *Kline v. Kane; Hillebrecht v. Stein; Yellow Cab Co. v. Bonds, supra.* Nevertheless, it is apparent from the fact that when Chisolm stopped to avoid colliding with the Nash, the signal he gave, his brake lights, was sufficient warning to the driver of the automobile immediately to the rear to enable him to stop in time to avoid colliding with Chisolm's car. There was nothing in the testimony to support an inference of negligence on Chisolm's part which contributed to the injuries allegedly suffered by appellant. *Todd v. Ferrell,* 212 Md. 574, 130 A. 2d 581; *Kaplan v. Solomon,* 203 Md. 131, 99 A. 2d 736; *Gandy v. Arrant,* 50 So. 2d 676 (La. App. 1951), cited with approval in *Todd v. Ferrell,* 212 Md. at 582.

In *Gandy* a truck was leading a column of traffic and was racing an oncoming truck in an attempt to reach and cross a narrow bridge on the highway. At the last instant, the driver of the lead truck suddenly slammed on his brakes, causing the sec-

ond car to stop suddenly. This, in turn, caused the plaintiff Gandy in the third car to stop suddenly and to be placed in a position to be struck by the driver of the fourth car, Arrant, who failed to stop until after his car crashed into the rear of Gandy's automobile. The court, in sustaining an "exception" of no cause of action as to the owner of the lead truck, said that the fact that the second car immediately behind the truck was brought to a successful stop, and the fact that plaintiff Gandy brought his own automobile to a stop before striking the second car ahead of him, alike indicated that the action of the truck driver was not so sudden as to precipitate trouble for an alert driver following in the rear. The court found no actionable negligence on the part of the truck driver.

Appellant also failed to produce evidence sufficient for a jury to find negligence on the part of Pruitt. There was no evidence that Pruitt failed to keep a proper lookout, and no evidence that he did not have his automobile under proper control or that he was traveling at an excessive rate of speed. The Chisolm car made a sudden stop in front of him, and Pruitt was alert enough to react in time to bring his automobile to a successful stop. Pruitt gave no signal to the following car other than his brake lights. However, there was no evidence that he could have given a different type of signal or have given a signal sooner than he did, or that considering the time and place of the accident and the suddenness with which it occurred, he should have anticipated that it would be necessary to slow down sooner. Cf. *Todd v. Ferrell* and *Kaplan v. Solomon, supra.*

Appellant argued that his case against the administratrix was prejudiced by the granting of motions for directed verdicts in favor of Chisolm and Pruitt. Appellant has shown no prejudice. In negligence cases, it is incumbent upon the plaintiff to produce some evidence that the defendant violated some duty by his act or omission and thereby caused injury. *Bauman v. Woodfield,* 244 Md. 207, 223 A. 2d 364; *Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475. Since the evidence in this case permitted only one inference—that Chisolm and Pruitt did not violate any duty owed to the appellant, we perceive no reason why directed verdicts should not have been peremptorily granted. *Bauman v. Woodfield, supra; Richardson v. Boato,* 207 Md. 301, 114 A. 2d 49; *Garozynski v. Daniel,* 190 Md. 1, 57 A. 2d 339.

Other contentions of appellant were that the court erred in refusing, as requested, to instruct the jury that there was no evidence legally sufficient to establish that appellant was guilty of any contributory negligence and in refusing to instruct that the jury must find in appellant's favor on the issue of negligence of Tibbs. Appellant took no exception to the court's failure to give the above instructions. Nor did appellant raise these issues in motions for directed verdict. Where the appellant failed to request directed verdicts or to except to the submission to the jury of the issues of primary and contributory negligence, he waived review of the questions on appeal. Maryland Rule 554 d and e. *Cohen v. Engel,* 229 Md. 87, 181 A. 2d 657. See also *Rockville Investment Corp. v. Rogan,* 246 Md. 246, 229 A. 2d 76 (1967).

Appellant also requested an instruction that under the law no person shall drive a vehicle on the highway at a greater speed than is reasonable and prudent under the conditions then existing and that the fact that the speed of the vehicle is lower than the maximum speed limit in the area shall not relieve the driver of the duty to reduce speed when special hazards exist. The court instructed the jury as to the second part, but refused to give the first part because it felt that there was no evidence as to speed immediately prior to the accident. Appellant excepted to the failure of the court to include the first part in its instructions to the jury.

Edwards testified that Tibbs traveled the first of the two miles before the point of impact at a speed of fifty to sixty miles per hour. He also stated that before the accident the Tibbs vehicle, which was about one and one-half car lengths behind Pruitt's automobile, was traveling at approximately the same speed as the Pruitt automobile. The uncontradicted testimony of Pruitt was that he was traveling about thirty to thiry-five miles per hour approximately two car lengths behind the Chisolm car for about fifty yards just before the point of impact. The testimony concerning the speed limit in the area was not clear as to whether it was forty or fifty miles per hour.

The court instructed the jury, in addition to what is mentioned above, that a motorist is negligent if he does an act which a reasonably prudent person would not do under similar cir-

cumstances and that the jury, in determining whether Tibbs was following the car ahead too closely under the circumstances, should consider the speed of the following vehicle as well as traffic and conditions of the highway.

The evidence on the rate of speed traveled by Tibbs before the accident and the breadth of the instructions which were given compel this Court to hold that the trial court did not commit prejudicial error in omitting part of appellant's requested instructions. There was no obligation that the trial court point out any and all of the reciprocal duties and obligations of the respective parties in detail if the subject was fully and comprehensively covered in the instructions given the jury. *Flohr v. Coleman,* 245 Md. 254, 225 A. 2d 868; *Lemons v. Chicken Processors,* 223 Md. 362, 164 A. 2d 703; *Ager v. Baltimore Transit Co.,* 213 Md. 414, 132 A. 2d 469.

Since we have concluded that the trial court did not err in submitting the questions of primary and contributory negligence to the jury and the jury found in favor of Laura B. Tibbs, administratrix c.t.a., it becomes unnecessary for us to consider the trial judge's rulings upon the evidence relating to appellant's injuries. *Kline v. Kane, supra; Cobourn v. Morrison,* 227 Md. 96, 175 A. 2d 589.

*Judgments affirmed, with costs.*