Froessel, J.
 

 The issue before us in this declaratory judgment action is whether an automobile liability policy issued by appellant to the City of Albany afforded coverage to the city and one Douglas Wells, a member of the Albany police force, for any liability incurred as a result of a fatal accident to one Samuel Robinson, also a member of the Albany police force. If such coverage was afforded, then appellant, under the terms of its policy, is obligated to defend a wrongful death action instituted against the city and Wells by Robinson’s administratrix. The case was tried by the court without a jury upon the following stipulated facts:
 

 On May 13, 1957 an Albany police prowl car driven by Wells in the performance of his duties collided with another vehicle
 
 *426
 
 at the intersection of Madison and Lake Avenues in the City of Albany. Robinson was a passenger in the police car, in the performance of his duties as a police officer, and was killed as a result of the collision. The decedent’s administratrix commenced a wrongful death action against the City of Albany and Wells and, after appellant disclaimed coverage under the policy and refused to defend the action, the city and Wells brought this declaratory judgment action.
 

 At the time of the accident, and for an annual premium of $95.85, the police car was insured by an automobile liability policy issued by appellant to the “ City op Albany, Dept, op Police ” as the named insured. In the section entitled “ Exclusions ’ ’ the policy provided, insofar as pertinent:
 

 ‘ ‘ This policy does not apply: * * *
 

 “ (d) under coverage A,
 
 to bodily injury to
 
 or sickness, disease
 
 or death of any employee of the insured arising out of and in the course of
 
 (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen’s compensation law, or (2)
 
 other employment by the insured-,
 

 “(e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen’s compensation, unemployment compensation or disability benefits law, or under any similar law” (emphasis supplied). •
 

 Neither Wells nor Robinson was “ engaged in domestic employment within the meaning and intent of the policy at the time of said accident”, nor were they covered by workmen’s compensation, social security, or the Employers’ Disability Benefits Law. The City of Albany is not required to carry workmen’s compensation on its police officers.
 

 Section III of the policy, entitled “Definition of Insured ”, contained the usual omnibus clause in subdivision (a) insuring, in addition to the named insured, any person operating the vehicle with the permission of the named insured, and further provided:
 
 ‘ ‘
 
 The insurance with respect to any person or organization
 
 other than the named insured
 
 * * *
 
 does not
 
 apply: (1) * * *; (2)
 
 to any employee with respect to
 
 injury to or sickness, disease
 
 or death of another employee of the same employer injured m the course of such employment in an acci
 
 
 *427
 

 dent arising out of the
 
 maintenance or
 
 use of the automobile in the business of such employer.”
 
 (Emphasis supplied.) Wells was using the involved vehicle with the permission of the named insured at the time of the accident.
 

 It may he noted at the outset that the question of the liability of the City of Albany and Wells to the administratrix of the Robinson estate is not before us now. We are concerned solely with the liability of the insurer under the policy, as written. Special Term simply held that neither the “ exclusion ” nor the “ definition ” provision of the policy was applicable, since ‘
 
 ‘
 
 policemen are not employees of the city but are governmental agents of the State ”. The Appellate Division agreed that the issue of coverage was controlled by the
 
 common-law
 
 rule that “ a policeman is not considered a municipal agent or servant but a public officer performing a governmental function.
 
 (Matter of Evans
 
 v.
 
 Berry,
 
 262 N. Y. 61, 68;
 
 Matter of Ryan
 
 v.
 
 City of New York,
 
 228 N. Y. 16, 19.) ” In that connection, the court reasoned that section 50-a of the G-eneral Municipal Law — which provides, in pertinent part, that a person
 
 “
 
 appointed ” by a municipality to operate a municipally owned vehicle
 
 ‘ ‘
 
 shall, for the purpose of this section, be deemed an employee of the municipality, notwithstanding the vehicle was being operated in the discharge of a public duty for the benefit of all citizens of the community and the municipality derived no special benefit in its corporate capacity ”
 
 *
 
 — did not create “ an employee status on the part of the decedent” for the purpose of the employee exclusionary provision of the policy, since 6
 
 ‘
 
 Decedent was not the driver and it is only the driver — the person ‘ appointed ’ to operate the vehicle — who shall be 6 an employee ’.” The statutory purpose of imposing liability on the municipality for the negligent" operation of municipal vehicles was
 
 ‘‘
 
 completely accomplished” by “ denominating the operator an employee 1 for the purpose of [the] section ’ ”, and hence the court saw
 
 ‘ ‘
 
 no ground for extending the application of the statute to any other person ”.
 

 The Appellate Division further held that Wells qualified as an additional insured ‘
 
 ‘
 
 within the definition of the policy ’ ’, since
 
 11
 
 Decedent, retaining his common-law status as a public
 
 *428
 
 officer, was not Wells’ fellow servant and never became ‘ another employee ’ of the city” (Policy, § III, subd. [a], par. [2]). Although the court recognized that “ The concept of statuses differing as between the two police officers and variable as to one of them is doubtless an artificial one ”, it felt that such a result was ‘ ‘ clearly mandated by the unambiguous language employed by the Legislature to effect a particular and unmistakable intent.”
 

 We cannot agree that the nonemployee status of Police Officer Robinson is ‘1 clearly mandated by the unambiguous language ’ ’ of section 50-a. That section was derived from former section 282-g of the Highway Law (enacted by L. 1929, ch. 466), whose purpose was
 
 “
 
 to make municipalities liable for the negligence of the operators of their vehicles in the exercise of their statutory duties, in the course of their employment and in the discharge of their governmental functions.
 
 (Miller
 
 v.
 
 City of New York,
 
 235 App. Div. 259.) The Legislature provided that such an operator should, for the purposes of the act, ‘ be deemed to be an employee of the municipality,
 
 notwithstanding the vehicle was being operated in the discharge of a public duty.’
 
 ”
 
 (Matter of Evans
 
 v.
 
 Berry,
 
 262 N. Y. 61, 68; emphasis in original.)
 

 But this court further noted in the
 
 Evatls
 
 case (262 N. Y., pp. 70-71), in holding that the City of New York could constitutionally assume a liability for injuries caused by a police officer while engaged in his governmental duty of making an arrest: “ As was noted in
 
 Augustine
 
 v.
 
 Town of Brant
 
 [249 N. Y. 198, 205], the modern tendency is against the rule of non-liability of municipalities for the acts of firemen and policemen
 
 employed by them.
 
 The
 
 fiction
 
 that they are not acting in the course of their duties
 
 as city employees
 
 is no longer regarded as a part of the fundamental law. The tendency to apply the rule of
 
 respondeat superior
 
 ha,s been noted with approval in [citing numerous articles].” (Emphasis supplied.) In expressly abrogating the rule of nonliability with respect to the negligent operation of municipal vehicles, and making it crystal clear that those appointed to drive the vehicles were to be deemed employees of the municipality
 
 even when
 
 performing a governmental function, the Legislature certainly did not intend to provide that, for all other purposes, city nolicemen, etc., were not
 
 *429
 
 to be deemed employees of the municipality. If anything, it recognized the
 
 “
 
 modern tendency ” referred to above.
 

 In the same year in which section 282-g of the Highway Law was enacted, the Legislature fully waived the State’s immunity ‘ ‘ from liability for the torts of its officers and employees ’ ’ by enacting section 12-a (now § 8) of the Court of Claims Act (L. 1929, ch. 467), which presently makes the State, as well as its municipal subdivisions, liable in the same manner as individuals and corporations
 
 (Jackson
 
 v.
 
 State of New York,
 
 261 N. Y. 134;
 
 Bernardine
 
 v.
 
 City of New York,
 
 294 N. Y. 361, 365-366). As we noted in
 
 Becker
 
 v.
 
 City of Neto York
 
 (2 N Y 2d 226, 235), the
 
 Bernardine
 
 case “ expressly held ” that section 8 was ‘ ‘ equally applicable to the subdivisions of the State, such as the City of New York, as to the State itself, despite the existence of specific provisions for liability in the General Municipal Law5 ’. While section 50-d of the General Municipal Law expressly made a municipality liable only for the negligence of
 
 physicians and dentists
 
 in public institutions — who are deemed to be employees of the municipality
 
 ‘1
 
 for the purpose of this section ” (50-d) — we held in the
 
 Becker
 
 case
 
 “
 
 that the effect of section 8 of the Court of Claims Act is to make the State and its subdivisions liable, under the doctrine of
 
 respondeat superior,
 
 for the negligent acts of its
 
 paid employees,
 
 including
 
 nurses
 
 employed by it in its hospitals * * *.
 
 Under this enactment, all persons who are employees of the State are treated as such,
 
 and the doctrine of
 
 respondeat superior
 
 is applied to determine whether the State is liable.” (2 N Y 2d, pp. 235-236; emphasis supplied.) In rejecting the rule that treated
 
 “
 
 persons,
 
 who by all other tests are clearly employees,
 
 as independent contractors when they arc engaged in the performance of a medical act ”, wo noted that “ In enacting the Court of Claims Act, the Legislature did not intend to apply such rule to the State and its subdivisions ” (2 N Y 2d, p. 235; emphasis supplied; see, also,
 
 McCrink
 
 v.
 
 City of New York,
 
 296 N. Y. 99, 105-106;
 
 Schuster
 
 v.
 
 City of New York,
 
 5 N Y 2d 75, 81-83).
 

 Thus, even if section 50-a of the General Municipal Law could be read as preserving the
 
 11
 
 public officer ” status of those city policemen who are
 
 not1
 
 ‘ appointed ’ ’ to operate municipal vehicles, section 8 of the Court of Claims Act — the controlling legislative enactment — requires us to treat
 
 all
 
 city policemen
 
 *430
 
 as employees of the municipality, since “by all other tests [they] are clearly employees As Judge Lotjghean observed in the
 
 Bernardine
 
 case (294 N. Y., p. 366,
 
 supra), “
 
 the argumentation that had been contrived as a front for the doctrine of governmental immunity [that officers and employees when engaged in the discharge of so-called governmental functions acted as delegates of the State and not in behalf of any municipal master]
 
 did not survive the renouncement of that doctrine.'1
 
 ’ (Emphasis supplied.)
 

 In any event, section 50-a does not purport to affect or have any bearing on the definition of the word ‘ ‘ employee ’ ’ as used in an insurance policy. We are concerned, in the instant case, not with the liability of a
 
 municipality
 
 under a
 
 statute
 
 (cf.
 
 Miller
 
 v.
 
 City of Albany,
 
 158 Misc. 720, affd. 247 App. Div. 848), but with the liability of an
 
 insurer
 
 under a
 
 contract of insurance.
 
 The issue is the intent of the contracting parties, not the intent of the Legislature— (cf.
 
 Matter of Ryan
 
 v.
 
 City of New York,
 
 228 N. Y. 16, holding that members of the New York City Police Department were not covered by the Workmen’s Compensation Law since compensation was assured them by an independent statute) —and in deciding what the parties meant by the word “ employee ”, “ ‘ Our guide must be the reasonable expectation and purpose of the ordinary business man when making an insurance contract * * * ’
 
 (Burr
 
 v.
 
 Commercial Travelers Mut. Accident Assn.,
 
 295 N. Y. 294, 301). ‘
 
 The language employed in the contract of insurance must be given its ordinary meaning,
 
 such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it.’
 
 (Abrams
 
 v.
 
 Great Amer. Ins. Co.,
 
 269 N. Y. 90, 92.) ”
 
 (Morgan
 
 v.
 
 Greater N. Y. Taxpayers Mut. Ins. Assn.,
 
 305 N. Y. 243, 248; emphasis supplied.)
 

 Since the policy in question was specifically issued to cover the prowl car involved and used by the Albany Police Department, the parties surely must have considered members of the Albany police force to be employees of the city. If the language used in an insurance contract£ £ must be given its ordinary meaning ”, then it would be most unreal to hold that members of the Albany police force were not considered employees of the City of Albany, by which they are hired, paid, disciplined, and discharged. It is not necessary to extend the application of any
 
 *431
 
 statute to hold that both Wells and Robinson were employees of the city for purposes of the insurance contract. All we need do is to give the word “ employees ” its
 
 11
 
 ordinary meaning ”, and not assume that the parties intended to import an outmoded
 
 ‘1
 
 fiction ’ ’ into their contract.
 

 With reference to the risks excluded by the policy, the city contends that, even if decedent may be deemed its employee within the meaning of the policy, coverage is nonetheless afforded for any liability it incurred as a result of his death, since the purpose of the exclusionary provisions was “ to exclude coverage only for liability to employees of an employer who carries, or is required to carry, Workmen’s Compensation Insurance. ’ ’ Such a holding would completely disregard the provision excluding coverage for the ‘‘ death of any employee of the insured arising out of and in the course of * * * other [than domestic] employment by the insured ”, and include within the coverage of the policy a risk which the insurer manifestly considered too great to cover for the small premium involved. While it is well settled that
 
 ambiguities
 
 in an insurance policy are to be resolved against the insurer, since it wrote the policy, we find no ambiguity here.
 

 The pertinent provisions of the policy exclude three separate and distinct risks from coverage: (1) any obligation for which the insured or its carrier may be held liable under any Workmen’s Compensation or similar law (subd. [e]), (2) “ death of any employee of the insured arising out of and in the course of
 
 *
 
 * * domestic employment ”, if and
 
 only if
 
 workmen’s compensation benefits were payable or were required to be provided (subd. [d], par. [1]), and (3) “ death of any employee of the insured arising out of and in the course of * * * other employment by the insured ’ ’, i.e., employment other than domestic employment,
 
 without qualification
 
 (subd. [d], par. [2]). The distinction between domestic and other employment, with respect to the availability of workmen’s compensation, is clearly drawn, and the language plainly excluded from coverage the death of an insured’s employee
 
 “
 
 arising out of and in the course of * * * other employment ’ ’, notwithstanding the fact that the death may not have been compensable. It was so squarely held in
 
 Jewtraw
 
 v.
 
 Hartford Acc. & Ind. Co.
 
 (280 App. Div. 150,153), where Presiding Justice Foster wrote:
 
 “ ‘
 
 Cover
 
 *432
 
 age A ’ refers to bodily injuries and is common to both clauses (d) and (e). Reading the two clauses together it is quite clear (d), so far as claims for personal injuries are concerned, excludes all employees, other than domestics not covered by workmen’s compensation, irrespective of compensation benefits. If this is not so then clause (e) is superfluous. In our opinion the language of (d) if read alone is clear enough, but certainly when the two clauses are read together no ambiguity appears in either.” (See, also,
 
 Jewtraw
 
 v.
 
 Hartford Acc. & Ind. Co.,
 
 286 App. Div. 931, affd. 2 N Y 2d 788.)
 

 While some language of the Appellate Division, First Department, in
 
 Greaves
 
 v.
 
 Public Serv. Mut. Ins. Co.
 
 (4 A D 2d 609, 612) appears to take a different view, that language was not necessary to the decision, and was not adopted or indorsed by our court’s affirming opinion (at 5 N Y 2d 120). In that case, the party injured was concededly
 
 not
 
 an employee of Greaves, who qualified as an additional insured within the definition of the policy. We held (p. 125) the exclusionary clause had “no effect as to him [Greaves] since the injured man was not an ‘ employee of the insured ’ Greaves
 
 and
 
 the ‘ insured ’ Greaves was not liable to the injured man ‘ under any workmen’s compensation law ’ ” (emphasis supplied).
 

 Inasmuch as the injured party in that case was not an employee of the additional insured, it was not necessary to — and this court did not — approve the reasoning of the Appellate Division that “the basic and underlying purpose apparently was to exclude coverage only as to an insured who either carried, or was required to carry, workmen’s compensation insurance for the protection of an injured employee ” (4 A D 2d, p. 612). In defining the excluded risks, the Appellate Division’s
 
 dictum
 
 erroneously ignored the distinction between domestic and other employment with respect to the availability of workmen’s compensation benefits, perhaps because the two risks were not as clearly separated in the policy as here.
 

 The policy now before us, as opposed to that in the
 
 Greaves
 
 case, makes the distinction crystal clear. The exclusionary clause in
 
 Greaves
 
 included domestic employment and other employment in a single subdivision, immediately after which appeared the provision as to obligations incurred under the
 
 *433
 
 Workmen’s Compensation Law. Here, on the other hand, domestic employment,
 
 with the condition
 
 as to workmen’s compensation, is denominated paragraph (1) of subdivision (d); other employment,
 
 without such condition,
 
 is
 
 separately
 
 denominated paragraph (2) of subdivision (d); and obligations incurred under the Workmen’s Compensation Law are treated separately in subdivision (e). Since decedent here
 
 was
 
 an employee of the
 
 named insured
 
 — the City of Albany — and since his death arose out of and in the course of employment other than domestic employment, the policy as written did not afford coverage to the city for any liability incurred by it as a result of its employee’s death. The language of the exclusionary clause unequivocally excluded this risk from coverage (subd. [d], par. [2]).
 

 As to the driver of the vehicle, Police Officer Wells, respondent contends “ that even if Wells and Robinson are held to be employees of the City of Albany, and even if they are held to be the type employees as intended by exclusion (d), coverage is still afforded by the policy to Wells as an additional assured.” If Wells qualified as an additional insured within the definition of the policy, he would be entitled to coverage under the “separability” doctrine established by this court in
 
 Morgan
 
 v.
 
 Greater N. Y. Taxpayers Mut. Ins. Assn.
 
 (305 N. Y. 243, supra) and
 
 Greaves
 
 v.
 
 Public Serv. Mut. Ins. Co.
 
 (5 N Y 2d 120,
 
 supra)
 
 since decedent was not his employee under exclusion (d). In the two cited cases, this court (5 N Y 2d, p. 125) rejected the argument that an additional insured could not have more protection under a liability policy than the named insured, and established the proposition “ that an additional although unnamed insured * * * had to be treated as if he had a separate policy”.
 

 Under the omnibus clause provision in the ‘ ‘ Definition of Insured” (§ III, subd [a]), Wells would qualify as an additional insured, since he was using the car with the permission of the named insured at the time of the accident. However, as respondents themselves concede, paragraph (2) of this same “ Definition of Insured ” section also expressly excluded “ from coverage as an additional insured ” “
 
 any employee with respect to injury to * * * or death of another employee of the same employer
 
 injured in the course of such employment in an
 
 *434
 
 accident arising out of the # * * use of the automobile in the business of such employer.” Since both decedent and Wells were employees of the same employer, and inasmuch as decedent sustained fatal injuries in the course of that employment “in an accident arising out of the * # * use of the automobile in the business of such employer ”, Wells is expressly excluded from coverage as an additional insured with respect to the accident in question.
 

 The city’s further contention that it is not engaged in a “ business ” is as unreal as its argument that decedent and Wells are not its employees. As previously noted, the language employed in an insurance contract “ must be given its ordinary meaning ’ ’, and, since it is stipulated that both decedent and Wells were engaged in the performance of their duties as police officers at the time of the accident, it necessarily follows that the accident arose “ out of the * * * use of the automobile in the business of such employer ’ ’.
 

 It should be noted, in conclusion, that this case comes to us on bare stipulated facts, and the only issue presented to and decided by the lower courts was whether the terms of the policy, as written, afforded coverage to the City of Albany and Wells. Both parties rely on the policy provisions, and do not question their validity. The ‘ ‘ employee ’ ’ exclusion provision of the policy has been approved in the exact language and form used here by the State Department of Insurance (Ins. Beg. 35, subd.
 
 2;
 
 N. Y. Off. Comp, of Codes, Rules & Regulations, 12th Off. Supp., 1959, Jan. 1, 1956, to Dec. 31, 1956, p. 698).
 

 Accordingly, under the provisions of the policy as-written, no coverage is afforded to the plaintiffs herein by reason of the death of Robinson, and hence appellant is not required to defend the action brought by Robinson’s administratrix.
 

 The judgment appealed from should be reversed, with costs, and the matter remitted to Special Term for the entry of judgment in favor of appellant.
 

 Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis and Burke concur; Judge Foster taking no part.
 

 Judgment reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.
 

 *
 

 For similar provisions, see sections 50-b and 50-d of the General Municipal Lew*