RICHARD ALAN LEONARD ET AL. *v.* SAV-A-STOP SERVICES, INCORPORATED ET AL.

[No. 21, September Term, 1980.]

*Decided January 9, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas Sisk,* with whom were *Rasin & Sisk* and *Susanne Hayman Schmoldt* on the brief for appellant Richard Alan Leonard; *David M. Williams* on the brief for Mary Jane Weikel, other appellant.

*M. King Hill, Jr.,* with whom were *Jon H. Grube* and *Smith, Somerville & Case* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

The Maryland Workmen's Compensation Act does not give immunity to a worker against claims for damages based on injury or death tortiously caused to a co-worker in the course of their employment. Motor vehicle liability insurance policies of employers, in force in Maryland, routinely exclude coverage of the tortfeasor-worker in such cases.[1] Appellant, Richard Alan Leonard (Leonard), faces a wrongful death action brought by the family of a co-worker which is based on a motor vehicle tort. In an effort to avoid the resulting dilemma, Leonard sought indemnification from his employer, Sav-A-Stop Services, Incorporated (Services). He obtained a declaratory judgment to that effect from the Circuit Court for Anne Arundel County which was based on concepts of estoppel, negligent misrepresentation and negligence by way of failure to warn. The Court of Special Appeals reversed. *Sav-A-Stop Services, Inc. v. Leonard,* 44 Md. App. 594, 410 A.2d 603 (1980). We affirm the

---

1. The parties agree that the exception is a standard provision.

intermediate appellate court because Services had no duty to Leonard to provide him with insurance against the hazard involved here and because Services did not breach any duty to warn.

The background facts are succinctly stated by the findings of the trial court.

> The Plaintiff, Richard Allen [sic] Leonard (Leonard), and Carlton Rayhill Weikel (Weikel) were both employed by Defendant, Sav-A-Stop Services, Inc. on September 3, 1975. As part of the duties of his employment, Leonard was required to drive, and did with regularity, a vehicle provided to him by his employer. . . . Leonard occasionally transported fellow employees in the vehicle when it was necessary for him to have help. This fact was known to Sav-A-Stop Services, Inc. Weikel, Leonard's immediate superior in the company, was a passenger in the company vehicle on September 3, 1975. On that day the vehicle, driven by Leonard, was involved in an accident in Anne Arundel County, Maryland. As a result of this accident, Weikel was killed and Leonard was seriously injured. At the time of the accident, both men were acting in the course of their employment.
>
> Both Leonard and Weikel's widow filed claims with the Workmen's Compensation Commission and were given awards. Subsequently, Mrs. Weikel and her children . . . sued Leonard in the Circuit Court for Anne Arundel County for damages arising out of this accident. That case is Law No. D-160 [the wrongful death case].
>
> At the commencement of his employment with Sav-A-Stop Services, Inc., Leonard was covered by his own automobile liability insurance. He filled out a questionnaire for his employer . . . stating the same. At some time thereafter, Leonard sold his private automobile and cancelled his insurance. He did not notify his employer of this nor was he requested to give such notice.

In this state the Workmen's Compensation Act, Maryland Code (1957, 1979 Repl. Vol.), Article 101, "excludes an action in tort by an employee against his employer, but does not exclude tort actions between co-employees." *Hutzell v. Boyer,* 252 Md. 227, 232, 249 A.2d 449, 452 (1969). *See also Wilson v. Fraser,* 353 F. Supp. 1, 3 (D. Md. 1973); *Travelers Corp. v. Boyer,* 301 F. Supp. 1396, 1401 (D. Md. 1969); *Thomas v. Hycon, Inc.,* 244 F. Supp. 151, 154 (D.D.C. 1965).[2]

Leonard had never been told by Services that the employer's automobile liability coverage did not apply to him were he negligently to injure a fellow worker. Nor is there any evidence that Leonard inquired of Services about liability coverage. When the wrongful death action was brought, Leonard sought protection from Services' insurer under its general automobile liability policy. Coverage was denied because of an exception from the definition of "insured" as to "any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment . . . ."[3]

Leonard then instituted the present declaratory judgment action on the law side of the circuit court. In his third amended petition Leonard joined as defendants Services, the parent corporation of Services, the base and excess liability insurers and a prior policy period insurer of Services and of its parent, the lessor of the vehicle involved in the accident, the lessor's insurer and the persons who were plaintiffs in

---

**2.** According to 2A A. Larson, *The Law of Workmen's Compensation* § 72.10, at 14-30 (1976, 1980 Cum. Supp.), the "states currently permitting suit against coemployees are: Arkansas, Georgia, Iowa [intentional torts only], Louisiana [intentional torts only], Maryland, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey [intentional torts only], Rhode Island, South Dakota, Vermont and Wisconsin.

**3.** The provision has been called the "cross employee exception." General Insurance Company of America v. Reid, 216 So. 2d 41, 42 (Fla. App. 1968), *cert. denied,* 222 So. 2d 752 (1969). Its history is traced in Bevans v. Liberty Mutual Insurance Co., 356 F.2d 577 (4th Cir. 1966). Federal courts have sustained the exception against challenges that it violates Maryland law. *Id.* and Riviera Beach Volunteer Fire Company, Inc. v. Fidelity and Casualty Company of New York, 388 F. Supp. 1114 (D. Md. 1975). However, this Court has not ruled directly on the question which, for reasons stated *infra,* is not presented here.

the wrongful death action.[4] Partial summary judgment was granted in favor of the insurers of Services under its general automobile liability and excess policies.[5] This partial summary judgment determined that the cross employee exception was not contrary to public policy. After trial on the remaining issues, the circuit court by memorandum and order dated December 5, 1978 made declarations adverse to Leonard other than with respect to his claims against Services based on estoppel, negligence and negligent misrepresentation.

On the merits of the claims against Services the trial court reasoned that the employer had a duty to warn Leonard when it placed him in "a position to expose him to potential financial ruin." Silence of the employer "who knew or should have known of the [exception]" was said to be "an omission sufficient to give rise to an estoppel." Leonard relied on the silence, believed he was insured and was damaged thereby. The trial court also concluded that Services "impliedly represented that [the vehicle] was adequately insured for the purpose for which it would be used," without ascertaining the extent of Leonard's insurance or warning him to procure sufficient insurance, for which "the damages should equal the amount of personal liability incurred by [Leonard] which he would not have incurred otherwise." It was ordered and declared that Services be required (1) to pay damages equal to the cost of affording Leonard a defense in the wrongful death action; (2) to pay damages equal to the amount of any judgment which may be rendered against Leonard in the wrongful death action; (3) to afford a defense on behalf of Leonard in the wrongful death action; and (4) to reimburse Leonard for costs and attorney's fees. An order for appeal was noted by Services.

No cross-appeal was noted by Leonard. Thus none of the

---

4. Mrs. Weikel, individually, as personal representative of Weikel's estate, and as next friend of the infant children, and the children had been joined as defendants in the original, amended and second amended petitions for declaratory judgment. Although they were omitted in the caption of the third amended petition, the parties agreed at trial that they continued as defendants under the third amendment.

5. The excess policy also contained the exception.

declarations adverse to Leonard, including those bearing on the cross employee exception, are subject to review. An order for appeal was filed by the Weikels on January 10, 1979, but that appeal was dismissed by the Court of Special Appeals as having been filed too late.

In reversing the judgment as to Services, the Court of Special Appeals reasoned that there is no duty on "an employer to warn an employee against that employee's own negligence" and "[s]imilarly, there is no duty to warn the employee that no insurance coverage is provided for his own negligence." It further held that "the equitable estoppel doctrine can only be used as a defense to a cause of action or to avoid a defense, but not as the basis for an affirmative cause of action." *Sav-A-Stop Services, Inc. v. Leonard, supra,* 44 Md. App. at 600-01, 410 A.2d at 607.

### (1)

Before addressing the merits, we turn to a threshold issue of appealability. The Weikels argue as appellants in this Court [6] that there is no final judgment and the appeal is premature because the clerk of the circuit court "merely" recorded on the law docket the filing of the memorandum and order of December 5, 1979. Actually, the clerk recorded the filing of the memorandum and also copied on the law docket the text of the order which granted affirmative relief consistent with Leonard's requested relief against Services. Principal reliance is placed by the Weikel appellants on *Stitzel v. Kurz,* 18 Md. App. 525, 308 A.2d 430, *cert. denied,* 269 Md. 755, 761 (1973) in which appeals were held to be premature. That was a jury trial damage suit where the court filed a memorandum which concluded that a defendant's motion for judgment n.o.v. should be granted and the

---

**6.** After dismissal of their appeal, the Weikels, as appellees in the Court of Special Appeals unsuccessfully sought dismissal of Services' appeal to that court in order that the Weikels might then note a timely appeal by which they intended to challenge the validity of the cross employee exception. We granted the Weikels' petition for certiorari which questions the denial of its motion to dismiss the appeal of Services.

plaintiffs' motion for new trial denied, together with an order directing the clerk to enter these findings, but the clerk did not enter judgment on the docket. Here the action is one for declaratory judgment. Maryland Code (1974, 1980 Repl. Vol.), Section 3-411 of the Courts Article provides that in such actions the "declaration may be affirmative or negative in form and effect and has the force and effect of a final judgment or decree." The December 5, 1978 memorandum of the trial court constituted negative declarations and the order specified the affirmative declarations and relief awarded. The memorandum and order were filed and the filing was docketed. No further matter of form was required.

(2)

In its estoppel analysis of the silence of Services the trial court held that Services was under a duty to speak, by reasoning that the duty of the employer to furnish a safe place to work, and to warn, as stated in *Bauman v. Woodfield,* 244 Md. 207, 216, 223 A.2d 364, 368 (1966), reached the risk of financial harm to the employee presented here.

We do not view estoppel as the basis of an affirmative duty by Services to indemnify Leonard. In *Impala Platinum Limited v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 322, 389 A.2d 887, 903 (1978), it was said that this

> Court has upheld and consistently applied the definition of equitable estoppel contained in 3 J. Pomeroy, Equity Jurisprudence § 804 at 189 (5th ed. 1941):
>
> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his

part acquires some corresponding right, either of property, of contract, or of remedy."

. . . "Estoppel is cognizable at common law either as a defense to a cause of action, or to avoid a defense . . . ." *Bitting v. Home Ins. Co.,* 161 Md. 56, 60, 155 A. 329 (1931). . . .

As stated by Judge Chesnut, "Estoppel is a shield for defense but not a weapon of attack . . . . It is not the basis of an affirmative action." *United States ex rel. Nolan Co. v. Maryland Casualty Co.,* 38 F. Supp. 479, 484 (D. Md. 1941).

The trial court concluded its "estoppel" analysis by saying:

Thus Sav-A-Stop Services cannot avail itself of the defense that it did provide insurance for the vehicle and thus had fulfilled its duty as far as preparing the vehicle for its employee to drive. Given the reasonableness of the assumption that a vehicle, duly licensed and placed on the road, is adequately insured for the use intended, the Court finds no duty on the part of Leonard to inquire as to . . . exclusions.

The underlying premise which led the trial court to conclude that Services must indemnify Leonard is, in essence, not estoppel. Rather, it is a holding by the trial court that Services had a duty to prepare the vehicle for Leonard to drive it and that that duty included procuring adequate insurance on the vehicle for the use intended.

No contention is presented here that Services did not fully comply, both at the time of hire of Leonard in August, 1974 and at the time of the accident in September, 1975, with the required security provisions of the motor vehicle laws. *See* Maryland Code (1957, 1970 Repl. Vol., 1974 and 1975 Cum. Supps.), Art. 66½, subtitle 7. However, "[c]ompliance with a legislative enactment . . . does not prevent a finding of negligence where a reasonable man would take additional precautions." Restatement (Second) of Torts § 288 C (1964); *see also* W. Prosser, *Handbook of the Law of Torts* 203 (4th ed. 1971). In this case we are concerned only with the effect

of the presence of the cross employee exception in Services'
policy. As a result, one issue presented is whether Services
owed Leonard an affirmative duty to procure and maintain
automobile liability coverage which had no cross employee
exception. This question of duty is addressed in part 4 hereof.

### (3)

With respect to the negligent misrepresentation theory,
Services made no express representation by spoken or
written words concerning its insurance. Leonard claims
negligent misrepresentation by silence. Only express rep-
resentations have been involved in the Maryland appellate
cases in which recovery on a theory of, or akin to, negligent
misrepresentation was advanced.[7] If any representation was
implicit in Services hiring Leonard and furnishing him with
a vehicle for use in his employment, the representation was
that the vehicle was insured to the extent required by stat-
ute. Compliance with statutes is not questioned here so that
a representation by conduct, if any, was true.

We shall assume, however, without deciding, that if a
party to a transaction is under a duty to speak, the failure
to speak may, under appropriate circumstances in an action
founded on *negligent* misrepresentation, constitute a rep-
resentation.[8] In the context of a defense of fraudulent

---

7. Vance v. Vance, 286 Md. 490, 408 A.2d 728, aff'g, 41 Md. App. 130, 396
A.2d 296 (1979); Delmarva Drilling Co. v. Tuckahoe Shopping Center, Inc.,
268 Md. 417, 302 A.2d 37 (1973); St. Paul at Chase Corp. v. Manufacturers
Life Insurance Co., 262 Md. 192, 278 A.2d 12 (1971); Brack v. Evans, 230
Md. 548, 187 A.2d 880 (1963); Piper v. Jenkins, 207 Md. 308, 113 A.2d 919
(1955); Holt v. Kolker, 189 Md. 636, 57 A.2d 287 (1948); Virginia Dare
Stores, Inc. v. Schuman, 175 Md. 287, 1 A.2d 897 (1938); and Local 75
United Furniture Workers of America, AFL-CIO v. Regiec, 19 Md. App.
406, 311 A.2d 456 (1973). We are mindful of the questions which have been
raised concerning the statment in *Tuckahoe* that "there can be no recovery in
an action for deceit on the ground of negligent misrepresentation . . . ." 268
Md. at 427, 302 A.2d at 41. *See* Geo. Byers Sons, Inc. v. East Europe Import
Export, Inc., 488 F. Supp. 574, 586 (D. Md. 1980); and Note, *Deceit and
Negligent Misrepresentation in Maryland*, 35 Md. L. Rev. 651, 671-673
(1976). Our citation of *Tuckahoe* is not a reaffirmation of the quoted
language. Resolution of the questions raised is not essential to the holding in
the present case and remains for consideration in a case in which the issues
are directly presented.

8. In Fegeas v. Sherrill, 218 Md. 472, 476-477, 147 A.2d 223, 225-26
(1958) this Court stated that "[t]o create a cause of action, concealment

concealment asserted against an action brought by a debtor against his creditor for specific performance to obtain corporate stock we said:

> There was no false statement made by [plaintiff] to [defendant], nor was there the suppression of fact. He was asked no question which required him to divulge what he knew. He was simply silent. There is a distinction between the suppression of a fact and mere silence. Where there is an obligation to speak a failure to speak will constitute the suppression of a fact; but where there is no obligation to speak silence cannot be termed suppression. [*Chicora Fertilizer Company v. Dunan,* 91 Md. 144, 159, 46 A. 347, 351 (1900).]

To the same effect with respect to estoppel in avoidance of a defense of forgery is *Mohr v. Universal C.I.T. Credit Corp.,* 216 Md. 197, 205, 140 A.2d 49, 52 (1958). *See also Furst v. Carrico,* 167 Md. 465, 469, 175 A. 442, 444 (1934); Restatement (Second) of Torts § 551 (1976); W. Prosser, *Handbook of the Law of Torts* 694-699 (4th ed. 1971).

Here Leonard predicates the duty of Services to speak on the employer-employee relationship and on a duty of the employer to warn.[9] As a result, the negligence and misrepresentation theories merge. Restatement (Second) of Agency § 471 (1957) sets forth the general rule that

> [a] principal is subject to liability in an action of tort for failing to use care to warn an agent of an unreasonable risk involved in the employment, if the principal should realize that it exists and that the agent is likely not to become aware of it, thereby suffering harm.

Comment *b* to § 471 reflects that the harm may be physical or pecuniary, "as where the principal directs the agent to

---

must have been intentional . . ." and that "[t]he affirmative suppression of truth must have been with intent to deceive."

**9.** Leonard contends Services did not raise in the trial court that it had no duty to warn. The record does not support Leonard's position.

bind himself to a contract on behalf of the principal and fails to reveal relevant facts concerning the risks of performance, thereby causing the agent to respond in damages." [10] With respect to the working conditions of servants, Restatement (Second) of Agency § 510 (1957) states:

> The master's duty as to working conditions includes a duty that care be used to give such instruction to servants employed by him as, from what the master should know concerning them and the work they are employed to do, is necessary to prevent unreasonable risk to them and to other servants during the progress of the work, and to give them work suitable to their apparent capacities.

The question thus becomes whether the general rules concerning warning apply to the circumstances here. Did Services owe an affirmative duty to Leonard to warn Leonard of the absence of liability insurance coverage in circumstances where the cross employee exception would operate? This question is much like whether Services had a duty to insure without the exception.

### (4)

We have neither been cited to, nor have we found, any decision bearing directly on the existence of any duty either to insure without, or to warn of the inclusion of, the cross employee exception.[11] Strongly suggestive that the law does

**10.** Section 471 appears to have been cited twice. Both cases involved bodily injury. Dahlgren v. Coe. 311 Mass. 18, 40 N.E.2d 5 (1942) (judgment for domestic laundress scalded by tap water); and Hopkins v. Hacker, 105 N.H. 150, 195 A.2d 587 (1963) (no recovery by rental agent against principal for injury suffered in assault by irate tenant).

**11.** In Mason v. Morrow's Moving & Storage Ltd. (1977) 2 C.C.L.T. 118, [1977] 2 W.W.R. 728 the British Columbia Supreme Court entered judgment in favor of a bailor against a custodian for reward for failure to warn of the absence of fire insurance maintained by the warehouseman on stored goods. This judgment was reversed by the British Columbia Court of Appeal on an analysis directed to the cause of the fire, namely, arson. The trial court decision is the subject of an article by Litman, *Bailee's Liability for Failure to Warn Bailor of Lack of Insurance: Source of the Duty of Care*, 16 Alberta L. Rev. 20 (1978).

not impose either such duty is the significant number of cases which have applied the exception according to its terms without reference to either of the duties on which Leonard necessarily relies.[12] But the absence of authority on the point requires that we turn to first principles.

Professor Francis H. Bohlen, in part I of his article, *The Moral Duty to Aid Others as a Basis of Tort Liability,* 56 U. Pa. L. Rev. and Am. L. Reg. 217 (1908) presents a scholarly analysis of the then evolution of affirmative duties. He recognizes a class of duties "annexed by the policy of the law as necessary incidents to a relationship voluntarily assumed, normally varying in extent as the relation is gratuitous or beneficial to him on whom the obligation is laid." *Id.* at 226. One such relationship is employer-employee.

> This relation is voluntary on both sides and is for the benefit of both. The master's duty extends no further than to take care not to expose the servant to unnecessary risks from sources over which the master having exclusive control has the sole ability to protect the servant, and, from which the servant,

---

12. *See, e.g.,* Bryan v. Aetna Casualty and Surety Co., 381 F.2d 872 (8th Cir. 1967) (Arkansas law); Bevans v. Liberty Mutual Insurance Co., *supra,* (Maryland law); Stewart v. Liberty Mutual Insurance Co., 256 F.2d 444 (5th Cir. 1958) (Louisiana law); Campbell v. American Farmers Mutual Insurance Corp., 238 F.2d 284 (8th Cir. 1956) (Missouri law); Lumberman Mutual Casualty Insurance Co. v. Stukes, 164 F.2d 571 (4th Cir. 1947) (South Carolina law); Riviera Beach Volunteer Fire Company, Inc. v. Fidelity and Casualty Co. of New York, *supra;* Travelers Corp. v. Boyer, *supra;* McDowell v. United States Fidelity & Guaranty Co., 260 Ala. 412, 71 So. 2d 64 (1954); Limon v. Farmers Insurance Exchange, 11 Ariz. App. 459, 465 P.2d 596 (1970); Rollo v. California State Automobile Ass'n, 159 Cal. App. 2d 172, 323 P.2d 531 (1958); McRae v. Snelling, 303 So. 2d 670 (Fla. App. 1974) (dicta); General Insurance Co. of America v. Reid, *supra;* General Accident Fire & Life Assur. Corp. v. Kimberly, 61 Ga. App. 153, 6 S.E.2d 78 (1939); State Farm Mutual Automobile Insurance Co. v. Staff, 26 Ill. App. 3d 217, 325 N.E.2d 1 (1975); Brown v. Green, 204 Kan. 802, 466 P.2d 299 (1970), *overruled on other grounds,* Spruill Motors, Inc. v. Universal Underwriters Insurance Co., 212 Kan. 681, 512 P.2d 403 (1973); Hanson v. Zollars, 189 Kan. 699, 371 P.2d 357 (1962); Manuel v. *Liberty Mutual* Insurance Co., 256 La. 480, 236 So. 2d 807 (1970); Turnage v. State Farmers Mutual Tornado Insurance Co., 388 S.W.2d 342 (Mo. App. 1965); Chavez v. Pino, 86 N.M. 464, 525 P.2d 391 (1974); City of Albany v. Standard Accident Insurance Co., 7 N.Y.2d 422, 198 N.Y.S.2d 303, 165 N.E.2d 869 (1960); Pyykola v. Woody, 52 Wis. 2d 342, 190 N.W.2d 534 (1971). *See generally* Annot., 45 A.L.R.3d 288 (1972, 1980 Supp.).

being ignorant of the true condition of affairs, is unable to protect himself by withdrawing from the service.

He must provide and prepare as to those matters within his exclusive control a business as safe as it appears to be. The master's duty in this respect is usually said to comprise only certain definite duties, these (1) of supplying safe tools and appliances; (2) a safe place to work; (3) a sufficiency of not obviously incompetent fellow-servants; (4) a safe system of rules and regulations where the complicated nature of the business makes it necessary for the servant's protection, and (5) in many jurisdictions some by common law and some by statute, efficient superintendence. These, however, are but the more usual instances of the application of the general principle which requires from the one, able to afford it, protection to the other incompetent to protect himself. These are the usual things over which the master has the exclusive control and the sole power to make safe; the servant if ignorant of the defects therein being unable to protect himself by withdrawing from the employment, and by the very nature of the employment being forced to take and use what the master provides him and so to look solely to his master's care in these particulars for his safety. [*Id.* at 235-36.]

In Leonard's appeal the harm which he seeks to avoid is the product of factors which are not within the control of, or subject to the power of Services, in the sense described by Bohlen. Harm to Leonard arises from the concurrence of (1) the use by the insurance industry of the cross employee exception, (2) the absence of any statutory defense under the Maryland Workmen's Compensation statute to one in Leonard's position, and (3) the happening of the accident with Weikel as a passenger. The present case differs from the case of a supplier of goods, the use of whose products involves a foreseeable risk of harm and who thereby is under a concomitant duty to warn the user. *See, e.g., Moran v. Faberge, Inc.,* 273 Md. 538, 332 A.2d 11 (1975).

Indeed, from the standpoint of the claim for indemnity for damages which might be awarded against Leonard for the wrongful death of Weikel, the happening of the accident must be viewed as caused exclusively by fault on the part of Leonard. Any obligation of Services presently to pay to Leonard the amount of any judgment obtained by the Weikel family presupposes that Leonard has been found liable. Under the hypothesis there must be negligence by Leonard for his economic loss to arise.[13]

At common law an employer is not an insurer of his servant's safety. *McVey v. Gerrald,* 172 Md. 595, 602, 192 A. 789, 792 (1937).

> However, it is the affirmative duty of an employer in a master-servant relationship to provide his employee with a reasonably safe place in which to work and to warn and instruct his employee concerning the dangers of the work known to him which are not obvious and can not be discovered by the exercise of reasonable care by the employee. This duty is relative and conditional, and what would be a full discharge of the duty under one set of circumstances may not be under another. The duty to warn or instruct depends upon the age, understanding, and experience of the employee and upon the nature of the work. Where the employee, by reason of his youthfulness or inexperience, is unable to comprehend the dangers of the work or where the dangers are of such nature as to give reasonable ground for believing that they are not known to such employee or would not be discovered after a reasonable time, and they are actually or constructively known to the employer, the failure of the employer to warn the employee is a breach of his duty. [*Bauman v. Woodfield, supra,* 244 Md. at 216, 223 A.2d at 368.]

---

**13.** The claim of Leonard for indemnification for the cost of defense is not subject to a comparable analysis. Liability insurance policies customarily provide for a defense even of claims which are groundless. Consequently, fault of Leonard may or may not be the cause of his incurring the expense of defending the wrongful death suit.

The premise of this relative and conditional duty to warn is superior knowledge of the employer. "The duty of the master to give instructions to the servant is based upon the assumption that the master possesses some knowledge concerning the work and its dangers, that the servant by reason of ignorance or inexperience does not possess." *F.S. Royster Guano Co. v. State ex rel. MacDonald,* 130 Md. 170, 176, 100 A. 104, 106 (1917).

The problem presented in the present case can arise with any employer who has at least one vehicle used in the work and has at least two employees. We cannot say that all such employers in this state are assumed to understand the operation and effect of a cross employee exception in their automobile liability insurance policies, or to understand the lack of immunity to co-workers under the Maryland Workmen's Compensation Act. Nor do we believe that reasonable care requires all such employers to foresee the interaction of these two factors in the event one of their employees negligently causes bodily injury or death to a co-worker.

Because the risk of the types of economic harm to the employee presented in the instant case arises out of the insurance statutes and practices in this state, because the principal type of economic harm involved, *i.e.,* tort damages payable to a co-worker, requires employee fault as a concurring factor, and because we are of the opinion that it is unreasonable to expect all possibly effected employers to foresee the somewhat sophisticated economic risk involved, we hold that Maryland law does not generally impose on all employers, who furnish a vehicle to one employee for use with a co-worker in the course of employment, a duty either to insure without, or to warn of the effect of, the cross employee exception.

In the record of the instant case, there was no evidence of any special contract, or of facts or circumstances peculiar to the situation of Leonard and Services, which would alter the rule set forth above. There was no evidence of any commercially reasonable availability to Services of an automobile liability policy on vehicles used in its business by its

employees from which the cross employee exception was removed. Nor was there any evidence that Services was in fact aware of the effect of the exception and of its relation to Maryland Workmen's Compensation law. For the reasons previously stated, the fact that Services was a named insured, and presumably possessed or had access to the policy, is insufficient to give rise to a duty to warn of the exception. The Court of Special Appeals was therefore correct in reversing the declaratory judgment.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the appellants.*