Richard **CARTWRIGHT**, et al.

v.

**HEALTH & WELFARE PENSION FUND.**

Civ. No. Y–90–1459.

United States District Court, D. Maryland.

Aug. 14, 1991.

128

Gerald F. Gay, Baltimore, Md., for plaintiffs.

Christine Williams, Lutherville, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Richard Cartwright was a member of the Freight Drivers and Helpers Local 557 Health and Welfare Fund ("the Fund"), and Shirley Cartwright was entitled to coverage as his spouse. Mrs. Cartwright was also covered by CareFirst, a health maintenance organization ("HMO"), owned and operated by HealthCare Corporation of the Mid–Atlantic, Inc.[1] Mrs. Cartwright was a

---

1. The Fund and the Health Care Corporation of     the Mid–Atlantic were employee benefit funds

member of CareFirst under a group policy, incident to her employment by Francis Scott Key Hospital.

Shirley and Richard Cartwright incurred hospital and medical bills as a result of the birth of their son on May 30, 1987. They timely submitted the appropriate documentation to the Fund and CareFirst for the medical expenses they incurred resulting from the birth of their son. Mrs. Cartwright did not use the services of CareFirst providers for the pregnancy, childbirth or the related surgical procedures,[2] and Care-First denied payment of such medical expenses. The Fund denied payment, stating that, pursuant to the coordination of benefits provision of its plan of benefits, it is not the primary payor.[3] It argues that under that provision, CareFirst is the primary carrier. The Cartwrights filed suit against both the Fund and CareFirst, alleging wrongful denial of benefits under the Employee Retirement Income Security Act of 1974.[4]

Plaintiffs seek review of the Fund's denial of benefits. The Trustees of the Fund interpreted the language of the Summary Plan Description ("the Plan" or "the SPD") that was in effect from January 1, 1985 through December 31, 1988 to require the patient to utilize the services of the primary carrier, or forego coverage. The Trustee also interpreted the language to mean that a failure to utilize the services of the primary carrier does not result in the Fund's becoming primary.

Review of the challenged denial of benefits is a *de novo* standard, unless the benefit plan gives the plan administrators discretionary authority to construe the plan's terms, in which case a deferential standard is to be applied. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 954–57, 103 L.Ed.2d 80 (1989). The Fourth Circuit noted that the threshold question for reviewing courts is now "whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself. If the plan's fiduciaries are indeed entitled to exercise discretion of that sort, reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse." *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). The trustee's interpretation of relevant provisions of the plan documents under the deferential "abuse of discretion standard" will not be disturbed if *reasonable. Bruch*, 109 S.Ct. at 954. (emphasis supplied). Where plan fiduciaries have offered a "reasonable interpretation" of disputed provisions, "courts may not replace [it] with an interpretation of their own"—and therefore cannot disturb as an "abuse of discretion" the challenged benefits determination. *Holland v. Burlington Industries, Inc.* 772 F.2d 1140, 1149 (4th Cir.1985), *cert. denied* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986) (citing *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 204–05 (4th Cir.1984)).[5] The

within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002.

**2.** Plaintiffs concede that Mrs. Cartwright did not obtain medical care from a CareFirst affiliated physician. They state that she was erroneously informed by a representative of CareFirst that because she was in her seventh month of pregnancy when she attempted to obtain treatment under the CareFirst plan, she was ineligible for treatment.

**3.** Mrs. Cartwright also contends that in November 1986, she spoke with an unidentified person at the Freight Drivers Local 557 Health and Welfare Fund to inquire about coverage. She maintains that she told the person she had coverage with CareFirst and inquired whether her husband's insurance would provide coverage.

She states that she was assured that there would be no problem as long as her husband was covered under the Fund's plan.

**4.** Plaintiffs settled their claim against Health-Care Corporation and dismissed it from this action.

**5.** Other factors requiring consideration include: (1) Whether the administrators' interpretation is consistent with the "goals of the plan"; (2) whether it might render some language in the plan documents "meaningless," or internally inconsistent; (3) whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; (4) whether the provisions at issue have been applied consistently; and (5) whether the fiduciaries' interpretation is "contrary to the clear language of the plan." *de Nobel,* 885 F.2d at 1188.

Fourth Circuit, prior to *Bruch,* held that the court must consider only the record before the plan administrator at the time it reached its decision. *Voliva v. Seafarers Pension Plan,* 858 F.2d 195, 196 (4th Cir. 1988) (citing *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985)). Although the matter is not settled, there is case law that under the post-*Bruch de novo* review standard, the court is limited to the record that was before the plan administrators. *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990); *Questech, Inc. v. Hartford Accident & Indemnity Co.,* 713 F.Supp. 956, 962 (E.D.Va. 1989). *But see Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir. 1989); *Quesinberry v. Individual Banking Group Insurance Plan,* 737 F.Supp. 38, 39 (W.D.Va.1990).

Plaintiffs argue that the Trust Agreement from which the plan emanates does not vest unfettered, final discretion in the Trustees in determining coverage and related matters. Contrary to plaintiffs' contention, however, the plan vests broad discretion in the Trustees of the Plan to interpret the provisions of the Plan. The document creating and governing the Fund is the Reaffirmation and Restatement of Agreement and Declaration of Trust Establishing the Freight Drivers and Helpers Local Union No. 557 Health and Welfare Fund.

*Section 5.8* provides for questions of eligibility:

. . . . .

(b) The Trustees shall adopt by-laws, rules or regulations in respect to eligibility of Participants and Beneficiaries for the benefits herein provided, which by-laws, rules or regulations may, by the above-specified vote, be changed and modified from time to time in such manner and to such extent as the Trustees may deem expedient and necessary in the proper administration of the Trust Fund.

The administration and operation of the employee benefit plan are likewise within the discretionary power of the Trustees:

*Section 5.1 Conduct of Trust Business.* The Trustees shall have general supervision of the operation of this Trust Fund and shall conduct the business and activities of the Trust Fund in accordance with this Trust Agreement and applicable law. . . .

*Section 5.2 Use of Fund.* The Trustees shall have the power and authority to use and apply the Trust Fund for the following purposes:

(a) To pay or provide for the payment of all reasonable and necessary expenses: . . . . (ii) of administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

*Section 5.9 Additional Authority.* The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) to enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contract [sic] and agreements and acts shall be binding and conclusive on the parties hereto and on the Participants involved. . . .

The Trust Agreement grants to the Trustees the broadest discretion to resolve disputes and to construe the language of any writing in connection with the Fund:

*Section 5.17 Construction and Determination by Trustees. Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They shall have full power to construe the provisions of this Agreement, the terms used herein, and the Plan, by-laws and regulations issued thereunder. Any such determination and any such construction*

*adopted by the Trustees in good faith shall be binding upon all of the parties hereto and the Participants and Beneficiaries hereof....*

*Section 6.2 Submission to Trustees.* All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits proferred [sic] by any Participant, Beneficiary or any other person, or whether as to the construction of the language or meaning of the Plan, by-laws, rules and regulations adopted by the Trustees or this instrument or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or, in the case of questions related to claims for benefits, or otherwise, shall be submitted to the Trustees, and the decision of the Trustees shall be binding upon all persons dealing with the Trust Fund or claiming benefits thereunder.

Thus, there is no question that the broad language used in the Reaffirmation and Restatement of Agreement grants the Trustees discretionary authority to "construe disputed or doubtful terms." However, under *de Nobel* the Trustees clearly abused their discretion in interpreting the coordination of benefits provision of the Plan.

### THE PLAN

*The Fund*

■ The Coordination of Benefits provision states:

Quite frequently, because both husbands and wives are working, members of a family are covered under more than one plan of GROUP health benefits. This may result in instances of duplication of coverage—where two Plans are paying benefits for the same hospital and medical expenses. For that reason, this Group Health and Welfare Plan has adopted a provision which will coordinate the benefits payable under this group, franchise, or service plans that may also insure you and/or your eligible dependents.

Under this coordination of benefits provision, the total benefit received by any one person from all the plans combined may not exceed 100% of the total allowable expenses. Benefits are reduced only when it's necessary to prevent an individual from making a profit on his benefits.

You must report any duplicate coverage you or your dependents may have on the claim form you submit to the Fund office.

Allowable expenses are any necessary and reasonable expenses for medical care or supplies covered by one or more of the plans insuring you or your dependents.

Who Pays First

If duplicate coverage exists through two or more plans, one will be designated as Primary and will make payments up to the limits of its benefit allowances. The other plan or plans, designated as Secondary, will make additional payments up to the maximums available under those plans for any covered expenses not reimbursed by the Primary Plan.

The Primary Plan will be determined as follows:

(1) When one of the plans does not contain a similar Coordination of Benefits Provision, it will always be Primary.

(2) When two or more plans contain the Provision, determination will be made in the following order:

(a) The plan covering the patient as an employee will be Primary.

(b) If (a) does not apply, the plan covering the patient as a dependent for the longer period of time will be Primary.

The Trustees deemed the HMO the primary carrier, and interpreted the language of the Plan to require, in those instances in which another plan is designated as the primary carrier, the patient to utilize the services of the primary carrier, or forego coverage. They also interpreted the Plan to mean that a failure to utilize the services of the primary carrier does not result in the

Fund's becoming the primary carrier. This interpretation is contrary to the express language of the Plan.

The coordination of benefits provision is clearly directed at family members who are covered by more than one insurance plan. In fact, it specifically states that the coordination of benefits provision is invoked when "two Plans are paying benefits for the same hospital and medical expenses." Furthermore, designation of the primary carrier occurs "if duplicate coverage exists through two or more plans."

It is undisputed that Mrs. Cartwright was covered by the Fund and eligible for reimbursement of medical expenses simply as a consequence of her status as spouse to a Fund member. It is also undisputed that Mrs. Cartwright was a member of Care-First, a health maintenance organization. However, mere membership to an HMO does not activate automatic coverage. CareFirst is not an insurance plan *per se*. It is a plan which bears the medical costs of its member so long as the patient utilizes the services of a designated doctor or facility. Hence, Mrs. Cartwright would be covered by CareFirst only if she *utilized* its services. Once she utilized CareFirst's services, then she would be covered by two plans paying the same medical and hospital expenses. The SPD explicitly provides that only then need the question of the primary carrier be determined.

Mrs. Cartwright contends that she was erroneously informed by a representative of CareFirst that because she was in her seventh month of pregnancy when she attempted to obtain treatment under the CareFirst plan, she was ineligible for treatment. The Fund maintains that the Cartwrights voluntarily decided not to seek treatment from CareFirst and argue that they cannot attempt to circumvent the coordination of benefits provision by refusing to seek treatment from their primary carrier.

Although the reason why Mrs. Cartwright did not obtain treatment from her HMO remains unclear, it is inconsequential to the Court's review of the Trustees' interpretation of the SPD. The coordination of benefits provision is invoked only when there is duplication of coverage. Since there was no duplication of coverage, the Trustees' interpretation of the Plan was not reasonable.

■ Furthermore, the Fund is still liable under the doctrine of equitable estoppel. The definition of equitable estoppel as applied in Maryland is:

> [T]he effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Knill v. Knill,* 306 Md. 527, 534, 510 A.2d 546 (1986), *citing* 3 J. Pomeroy, *Equity Jurisprudence,* § 804 (5th ed. 1941), *quoted in Leonard v. Sav–A–Stop Serv.,* 289 Md. 204, 211, 424 A.2d 336, 339 (1981). Thus, equitable estoppel is comprised of three elements: "voluntary conduct" or representation, reliance and detriment. *Id.* 306 Md. at 535, 510 A.2d 546. It requires that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped. *Id.* at 534, 510 A.2d 546. Although wrongful or unconscionable conduct is generally an element of estoppel, an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other. *Id.*[6]

---

**6.** The Fund argues that estoppel is disfavored by the ERISA scheme and cannot be a basis for recovery under that statute. Although the Ninth Circuit has rejected estoppel arguments in some ERISA actions, the Third Circuit has allowed

recovery to plaintiffs arguing estoppel. *See Davidson v. Southern California Meat Cutters Union & Food Employees Benefit Fund,* 859 F.2d 134, 136 (9th Cir.1988) ("[W]e applied a no-estoppel rule in a suit for employees benefits

There were references made at the hearing that Mrs. Cartwright spoke with a representative at the Fund in November 1986 regarding the Fund's coverage. She states she told the person she belonged to Care-First and when she inquired whether she could use her husband's insurance, she was told that so long as her husband was covered under the Fund's plan, there would be no problem. Although the Fund now challenges that it could not have so advised Mrs. Cartwright since this assertion is contrary to the terms of the Plan, Mrs. Cartwright relied to her financial detriment upon the representation that the Fund would cover her expenses.

Moreover, the Fund later advised Mrs. Cartwright by letters dated June 10, 1987, July 14, 1987, and August 3, 1987 that any expenses not covered by CareFirst would be considered under the Fund's plan in accordance with the coordination of benefits provision.

Thus, the Fund represented to Mrs. Cartwright that it would either compensate her for her complete medical and hospital bills, or at the minimum, supplement CareFirst's coverage. Since the Cartwrights settled with CareFirst, compensation to the Cartwrights would exceed 100% of the total allowable expenses. Accordingly, the Fund is hereby ordered to reimburse the Cartwrights for their medical and hospital expenses less the amount covered by Care-First.

against a jointly-sponsored trust fund. There are no contrary holdings in this circuit.") and *Rosen v. Hotel & Restaurant Employees & Bartenders Union Local 274,* 637 F.2d 592 (3rd Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981) ("the application of estoppel in pension cases is not altogether novel."). *See also Coleman v. Nationwide Insurance Co.,* 748 F.Supp. 429, 433 (E.D.Va.1990) (since Fourth Circuit has not so held, court declined to rule that the equitable remedy of estoppel is unavailable to plaintiffs under ERISA); *Scheuer v. Central States Pension Fund,* 358 F.Supp. 1332 (E.D.Wis.1973) ("[T]he *sui generis* nature of the pension agreement ... should not immunize it from the equitable principles that govern similar agreements. The rising ethical standards in business relations which the estoppel doctrine is designed to enforce are no less needed in the administration of pension funds ... If anything, estoppel is appropriate here.").